# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

### MARCH 1998 SESSION

FILED

June 26, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | C.C.A. NO. 03C01-9708-CR-00320 |
| Appellee, | ) | |
| | ) | SCOTT COUNTY |
| VS. | ) | |
| | ) | HON. LEE ASBURY, |
| VERONICA L. PHILLIPS, | ) | JUDGE |
| | ) | |
| Appellant. | ) | (Pretrial Diversion) |

FOR THE APPELLANT:                    FOR THE APPELLEE:


**CHARLES ALLEN**                     **JOHN KNOX WALKUP**
P.O. Box 5027                         Attorney General & Reporter
Oneida, TN  37841
                                      **MICHAEL J. FAHEY, II**
                                      Asst. Attorney General
                                      John Sevier Bldg.
                                      425 Fifth Ave., North
                                      Nashville, TN  37243-0493

                                      **WILLIAM PAUL PHILLIPS**
                                      District Attorney General

                                      **CLIFTON H. SEXTON**
                                      Asst. District Attorney General
                                      P.O. Box 10
                                      Huntsville, TN  37756


OPINION FILED:_____


**AFFIRMED**


**JOHN H. PEAY,**
Judge

# O P I N I O N

The defendant was charged in the indictment with one count of reckless homicide and one count of reckless aggravated assault. The defendant filed an application for pretrial diversion with the district attorney general, who denied the defendant's application by written response. The defendant then filed a petition for writ of certiorari with the trial court, which was denied. Pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure, the defendant sought and was granted permission to appeal the trial court's decision to this Court. The sole issue presented in this appeal is whether the trial court erred in determining that the district attorney general did not abuse his discretion by denying the defendant's application for pretrial diversion. After our review of the record, we affirm the trial court's decision.

The record indicates that on May 10, 1996, at 6:30 p.m., the defendant, who was twenty years old at the time, and a friend were traveling east at a high rate of speed on State Highway 63. This stretch of highway was dry and flat. As the defendant drove east, she passed a vehicle in front of her, causing a driver traveling in the westbound lane to pull to his right in order to avoid colliding head-on with the defendant's vehicle. At a point approximately two miles further, the defendant again attempted to pass a vehicle in front of her. This vehicle was driven by Gaylon Gibson. As the defendant pulled across the double yellow line into the westbound lane of traffic to pass Mr. Gibson's car, she collided head-on with a vehicle driven by Timothy Bowling. The defendant's car came to rest on the roof of Mr. Gibson's car. Apparently, nothing obstructed the defendant's view of the Bowlings' car prior to impact. Nonetheless, no skid marks were found on the road, indicating that neither the defendant nor Mr. Bowling applied their brakes prior to impact, possibly because neither had time to do so.

2

None of the people involved in the accident were wearing their seat belts. Mr. Bowling, who was thirty-four years old at the time of the accident, died as a result of the head-on collision, and his wife, who was traveling with him, sustained serious injuries. Mr. Gibson and his passenger were also injured, although not as gravely injured as the Bowlings. Both the defendant and her passenger were also seriously injured, and according to the accident report, neither remember the events leading up to the accident or the accident itself. Following the accident, the defendant was issued two citations, one for improper passing and one for reckless driving. Two months later, a grand jury indicted the defendant with the reckless homicide of Mr. Timothy Bowling and the reckless aggravated assault of Ms. Alice Bowling, his wife.

Several months later, the defendant applied for pretrial diversion. The defendant's application attested that she was diagnosed with cystic fibrosis when she was two years old, and as a result, she has always lived with her parents. The defendant's home life is stable, loving, and supportive. When the defendant graduated from high school in 1995, she began working at the Scott County Food Court and chaperoning on a volunteer basis for the local high school band. Because of the extensive nature of her injuries from the accident, she was unable to resume her employment at the food court, but she has continued to volunteer as a chaperone and she began babysitting on a part-time basis.

The defendant's application emphasized that the accident was not caused by alcohol or drug use and that the defendant did not have a history of drug or alcohol use. The application attested that the defendant had no criminal record, had no previous driving offenses, and had never been granted pretrial diversion. The defendant also detailed the injuries she received from the accident. She represented that various plates

3

and pins were inserted into several parts of her body, but that due to complications caused by her cystic fibrosis, her body rejected the plates and pins, and she was scheduled for surgery to remedy this and other problems. The defendant also represented that she has been visiting a counselor on a regular basis in order to deal with the emotional problems she has suffered as a result of the accident.

In support of her application, the defendant submitted letters from friends and authority figures in her life. These letters showed that the defendant had a good general reputation and has shown both family and social responsibility in her life. In sum, these letters vouched that the defendant was a trustworthy, honest, considerate, and responsible young woman who could rise above the tragedy she experienced if given the opportunity. The letters asked for leniency, mercy, and a "second chance" for the defendant.

The assistant district attorney general replied to the defendant's application for pretrial diversion by letter. In his letter, the assistant district attorney general stated that he had considered all of the factors discussed in the defendant's letter and he did not take issue with any of the facts the defendant enumerated in her application. Even so, he denied the defendant's application for diversion, citing the following reasons:

1. The nature and circumstances of the offense.

2. The offense involved more than one victim.

3. The personal injuries inflicted upon and the amount of property damage sustained by the victims was particularly great.

4. The offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement.

5. The defendant had no hesitation about committing a crime when the risk to human life was high.

6. Deterrent effect upon the defendant and others.

4

7. Denial of diversion is necessary to avoid depreciating the seriousness of the offense.

8. The ends of justice require denial of diversion.

The defendant sought the trial court's review of the denial. The parties scheduled a hearing at which the assistant district attorney general reiterated that he did not dispute any of the facts presented by the defendant. Moreover, the assistant district attorney general represented that he had considered all of the factors the defendant discussed, but what particularly influenced his decision to deny diversion was the impact diversion would have had on the ends of justice and the public interest. The assistant district attorney general also stated that in his opinion, considering that the defendant was driving well in excess of the speed limit and passing on a double yellow line, and considering that these intentional acts killed one person and caused grave injuries to three others, diversion was not warranted.

The trial court determined that the district attorney general did not abuse his discretion and that the denial of diversion was based upon sufficient facts. The trial court stated that a reckless act resulting in the death of an individual who has done no wrong is of the nature and circumstance to warrant close scrutiny when considering a pretrial diversion application. The trial court further agreed with the district attorney general that under the circumstances, denial of diversion was necessary to uphold the ends of justice and avoid depreciating the seriousness of the offense.

On appeal, the defendant argues several reasons why the trial court erred in upholding the district attorney general's denial of diversion. Primarily, she contends that the district attorney general relied upon insufficient proof, failed to look at all applicable factors, and instead relied too heavily on the nature and circumstances of the

5

offense, which was improper without some explanation of why these factors should outweigh the other factors. We disagree.

Upon application for diversion, the district attorney general must consider the relevant factors carefully in making a decision. The district attorney general "must consider all the evidence which tends to show that the applicant is amenable to correction and is not likely to commit additional crimes." State v. Winsett, 882 S.W.2d 806, 810 (Tenn. Crim. App. 1993). To that end, the district attorney general should consider, in addition to the circumstances of the offense, the defendant's criminal record, social history, present physical and mental condition where appropriate, amenability to correction, behavior since arrest, home environment, current drug usage, emotional stability, past employment, general reputation, marital stability, family responsibility, and attitude. See State v. Washington, 866 S.W.2d 950 (Tenn. 1993); State v. Hammersley, 650 S.W.2d 352 (Tenn. 1983). In addition, the district attorney general should consider the deterrent effect of punishment and the likelihood that pretrial diversion will serve the ends of justice and the best interests of both the public and the defendant. See Washington, 866 S.W.2d at 951; Hammersley, 650 S.W.2d at 355.

If the district attorney general denies diversion, he or she must inform the defendant through a formal, written response to the application. See Winsett, 882 S.W.2d at 810. This response should include a recitation of all evidence considered; the reason for the denial, including which factors were considered, how some factors controlled the decision, and why certain factors outweighed others; and an identification of any disputed issue of fact. Id. "If the [district] attorney general bases his decision on less than the full complement of factors . . . he must, for the record, state why he considers that those he relies on outweigh the others submitted for his consideration."

6

State v. Herron, 767 S.W.2d 151, 156 (Tenn. 1989).

Review of the district attorney general's decision to deny diversion is via a petition for writ of certiorari filed with the trial court. See T.C.A. § 40-15-105(b)(3). The district attorney general's decision denying diversion is presumptively correct, and the trial court must affirm his or her decision absent a finding of abuse of discretion. See id.; State v. Lutry, 938 S.W.2d 431, 434 (Tenn. Crim. App. 1996). In its review of the district attorney general's decision, the trial court is limited to the evidence originally considered by the district attorney general. Winsett, 882 S.W.2d at 810. However, where the district attorney general's letter denying diversion is insufficient for the trial court to determine what evidence the district attorney general considered, his or her reasons for denying the petition, and whether there are disputed issues of fact, the trial court should hold an evidentiary hearing in order to allow the district attorney general to place this information on the record. State v. Carolyn L. Curry, No. 02C01-9601-CC-00005, Carroll County (Tenn. Crim. App. filed January 2, 1997, at Jackson). Only in this way can the trial court be assured it is considering the same evidence considered by the district attorney general and ultimately determine whether the district attorney general abused his or her discretion in denying diversion. Id.

For the purposes of our review, the trial court's factual findings are binding on this Court unless the evidence preponderates against such findings. See Lutry, 938 S.W.2d at 434; State v. Houston, 900 S.W.2d 712, 714 (Tenn. Crim. App. 1995). We review the case not to ascertain if the trial court has abused its discretion, but to ascertain if the evidence preponderates against the factual findings of the trial court, which determines whether the district attorney general abused his or her discretion. See Lutry, 938 S.W.2d at 434; State v. Watkins, 607 S.W.2d 486, 489 (Tenn. Crim. App. 1980).

7

Thus, the underlying issue for our determination remains whether, as a matter of law, the district attorney general abused his or her discretion in denying pretrial diversion. See Lutry, 938 S.W.2d at 434; State v. Carr, 861 S.W.2d 850, 857 (Tenn. Crim. App. 1993).

Here, our review of the entire record reveals that the district attorney general considered all of the relevant factors he was required to consider and that his decision to deny diversion was based upon sufficient proof in the record. We further conclude that the district attorney general did not abuse his discretion in denying diversion under the totality of the circumstances of this case. While the record reveals information favorable to the defendant's character and sympathetic to her situation, the record also reveals the premature death of a young man and horrible injuries to several young people, all caused by the defendant's intentional decision to drive at excessive speeds and illegally pass a slower vehicle on a double yellow line. Although the accident occurred in daylight on a flat road with no apparent obstructions, the defendant failed to apply her brakes prior to hitting the Bowlings' car, which supports the notion that the defendant failed to even look for oncoming traffic before pulling across the double yellow line to illegally pass Mr. Gibson's car. It is also quite telling of the defendant's behavior that just prior to the accident, she had passed another car under similar circumstances, narrowly avoiding another careless accident and forcing another driver to pull out of her way. Under these circumstances, we cannot find an abuse of discretion in the district attorney general's decision to provide a deterrent, uphold the ends of justice, protect the public interest and not depreciate this offense by denying diversion. Based upon this same evidence in the record, we also reject the defendant's suggestion that Mr. Bowling's death and the others' injuries were not the result of an intentional act or acts.

Moreover, we conclude that the decision to deny diversion is sound even

8

though the assistant district attorney general may not have fully elaborated why he relied more heavily on some factors than on others. We emphasize that the decision to rely on some factors more heavily than others should be fully explained in writing in order to create a clearer record on review. See Winsett, 882 S.W.2d at 810; Herron, 767 S.W.2d at 156. Here, even though the assistant district attorney general may not have fully explained in writing his decision to give certain factors priority over others, he did state in writing that he reviewed each and every factor presented by the defendant but elected to deny the defendant's request based upon certain enumerated reasons. The assistant district attorney general offered further explanation at the hearing, where he again stated he considered all relevant factors and did not dispute any of the information submitted by the defendant, but that even so, he must deny the defendant's application because he believed the public interest and the ends of justice would be better served by a denial. Contrary to the defendant's assertions, then, the assistant district attorney general did state for the record that he was giving some factors priority over others and, to an extent, he did explain his decision to do so. While, as we have previously stated, he could have been more explicit and unambiguous in his explanation, we cannot find an abuse of discretion on this basis in the record.

We address one last point raised by the defendant. Throughout the defendant's argument, she reiterates that she met all technical eligibility requirements for diversion and that there is favorable evidence for each factor the district attorney general should have considered. This argument will not afford the defendant relief. While the defendant bears the initial burden to demonstrate to the district attorney general both eligibility for and entitlement to pretrial diversion, see Herron, 767 S.W.2d at 156; Winsett, 882 S.W.2d at 809-10, mere statutory eligibility under T.C.A. § 40-15-105(a) does not, standing alone, entitle a defendant to pretrial diversion. Instead, statutory eligibility sets

9

the stage for the district attorney general to review the information provided by the defendant on the diversion application or gathered through a pretrial investigation pursuant to T.C.A. § 40-15-104 and to determine if the defendant is entitled to pretrial diversion. Here, the fact that the defendant has favorable evidence relating to each relevant consideration does not mean she is automatically entitled to diversion. Neither does it discount the factors the district attorney general determined should have priority. Quite simply, the district attorney general's failure to grant diversion to a defendant who is merely technically eligible does not itself amount to an abuse of discretion.

In sum, none of the defendant's arguments show how the district attorney general abused his discretion in denying her application for pretrial diversion. Accordingly, we affirm.

_____
JOHN H. PEAY, Judge

CONCUR:

_____
PAUL G. SUMMERS, Judge

_____
CORNELIA A. CLARK, Special Judge