# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### FEBRUARY 1999 SESSION



**FILED**

**April 21, 1999**

**Cecil Crowson, Jr.**
Appellate Court Clerk

| | |
|---|---|
| **STATE OF TENNESSEE,** ) | |
| ) | **C.C.A. NO. 02C01-9809-CC-00268** |
| Appellant, ) | |
| ) | **MADISON COUNTY** |
| VS. ) | |
| ) | **HON. WHIT LAFON,** |
| **SHAUN MATTHEW DINWIDDIE,** ) | **JUDGE** |
| ) | |
| Appellee. ) | (Pretrial Diversion) |

FOR THE APPELLANT:                    FOR THE APPELLEE:

**JOHN KNOX WALKUP**
Attorney General & Reporter

**DOUGLAS D. HIMES**
Asst. Attorney General
John Sevier Bldg.
425 Fifth Ave., North
Nashville, TN  37243-0493

**JERRY WOODALL**
District Attorney General

**SHAUN A. BROWN**
Asst. District Attorney General
P.O. Box 2825
225 Martin Luther King, Jr., Dr.
Jackson, TN 38302

**CLIFFORD K. McGOWN, JR.**
113 North Court Square
P.O. Box 26
Waverly, TN 37185
        (On Appeal)

**GEORGE GOOGE**
District Public Defender

**JOSEPH L. PATTERSON**
Asst. District Public Defender
227 West Baltimore St.
Jackson, TN 38301
(At Trial and Of Counsel on Appeal)

OPINION FILED:_____

**REVERSED AND REMANDED**

**JOHN H. PEAY,**
Judge

# O P I N I O N

The defendant was charged by indictment with possession with intent to sell marijuana, possession with intent to deliver marijuana, and possession of drug paraphernalia. The State denied the defendant pretrial diversion, a decision which the trial court reversed after a hearing. The State now appeals, arguing that the trial court erred in granting pretrial diversion to the defendant.[1] Following a review of the record, we reverse the trial court's entry of pretrial diversion and remand the case for further proceedings.

According to the incident report in this case, the defendant's car had been reported in the past to be involved in drug deals. One evening, a police investigator watched as the defendant, accompanied by three friends, drove to a convenience store where he used a pay phone. The defendant then drove to an apartment complex and parked near another car occupied by two individuals. While the defendant's friends waited in his car, the defendant climbed into the back seat of the other car. Approximately one minute later, he returned to his car, carrying his wallet in his hand. The defendant's car was stopped a short while later. The defendant refused to give consent for a vehicle search, but during a patdown for weapons, an officer discovered a small baggie of marijuana and two packs of rolling papers in the defendant's "groin area," and the defendant was arrested. While searching the defendant's vehicle, officers found another baggie of marijuana "behind the radio console area." The total amount of marijuana seized totaled approximately one ounce. A later strip search of the defendant revealed a crack pipe inside his rectum.

On February 20, 1998, the trial court entered an order, apparently upon the

---

[1]Oral arguments were heard in Dyersburg, Tennessee. Students of the Lake County, Dyer County, and Dyersburg school systems attended at the invitation of this Court in an effort to educate them about our judicial system.

defendant's request, directing the parties to "explore the possibility of pre-trial diversion." The record, however, does not contain an application for pretrial diversion, any supporting materials, or even any reference that the defendant filed a formal written application and supporting materials.

On March 16, 1998, the Tennessee Department of Correction filed its pretrial diversion investigation report, which reflects that the defendant, who is single and has no dependents, has no prior adult arrests or convictions. This report also reflects that the defendant left high school after completing the eleventh grade because he was missing too many school days, but he later obtained his GED and plans to continue his education at a local community college. Apparently, the defendant had tried to enroll in night classes, but could not because the classes he wanted were full. According to the report, the defendant held various part-time, temporary jobs during summer and while he was in school. In February 1998, the defendant was hired for a production/assembly-type job paying $6.50 per hour, but he resigned three days later when he obtained work at Lowe's as a forklift operator for $10.00 per hour. According to the report, the defendant had been living with his parents until recently, when he moved out and began renting an apartment. Also included in this report was the defendant's statement that he "has no more involvement with marijuana" and wanted to participate in the pretrial diversion program because he did not want a felony criminal record. The defendant also stated that he submitted to a drug screen when he was hired for his first job in February 1998 and that he must pass a drug test at Lowe's, too.

By letter dated March 17, 1998, the district attorney general denied pretrial diversion based upon his review of the pretrial diversion investigation report. The district attorney general gave the following reasons for denying pretrial diversion:

1. The defendants [sic] crimes were not the result of impulse but required considerable effort and planning. State v. Holland, 661 S.W.2d 91 (Tenn. Crim. App. 1983).

3

2. The defendant has expressed no remorse for his conduct. <u>State v. Nease</u>, 713 S.W.2d 90.

3. The defendant has a poor work history indicating a serious lack of motivation to successfully complete pretrial diversion.

4. No family or friends are forthcoming to aid or encourage the defendant in any pretrial diversion program. Without such encouragement the defendant cannot hope to successfully complete pretrial diversion.

5. Possession and Sale of Narcotics are serious problems in this jurisdiction and allowing the defendant to participate in pretrial diversion would greatly undermine law enforcement efforts at curtailing this type of criminal activity <u>State v. Holland</u>.

6. The crimes involved trickery and deceit in that the defendant went to extraordinary lengths to hide contraband from the police.

7. There is no indication that the defendant would have stopped his/her criminal activity but for the intervention of law enforcement <u>State v. Markham</u>, 755 S.W. 2d 850.

8. The evidence indicates that the defendant has significant ties to the drug community in that he was able to contact any [sic] buy drugs without any apparent difficulty.

The defendant petitioned for a writ of certiorari, arguing that the district attorney general abused his discretion.

A certiorari hearing was held. At this hearing, the defendant testified he was currently working at 84 Lumber and planned to attend college in the future. He understood that if placed on the diversion program, he would have to abide by several conditions. He stated that since his arrest, at which time he was eighteen years old, he has "turned [his life] completely around," has begun attending college, and has not smoked marijuana. He further testified that he could have passed a drug test that very day and that he had passed a drug test in order to obtain his current employment. He testified his family supported him, and he acknowledged that several members of his family had written letters to the court on his behalf. These letters were introduced into evidence as exhibits. Four of these letters are dated after the district attorney general formally denied pretrial diversion, and two are not dated.

4

On cross-examination, the defendant was asked if marijuana was discovered in his "groin area," and the defendant replied it was under the waistband of his boxer underwear. He also testified that the other three individuals with him that evening were juveniles and none of them were searched. When the assistant district attorney general concluded his questioning, the trial court judge asked the defendant what kind of paraphernalia was involved in the offense. The defendant replied, "It was like rolling papers." The judge asked, "That's the paraphernalia?" and the defendant replied affirmatively. The defendant did not mention the crack pipe that was found during the strip search.

Both of the defendant's parents also testified. According to their testimony, the defendant had become more obedient, respectful, and responsible since his arrest. His mother testified that being arrested scared the defendant and that when he was released from jail, he immediately told them how sorry he was and "that he would never, ever do this again, and he promised not to disappoint us anymore, and he has not done that."

The State did not present any witnesses. Instead, the State entered into evidence a copy of the district attorney general's letter denying diversion, a copy of the incident report, and the pretrial diversion investigation report. The trial judge asked the assistant district attorney general how many cigarettes one ounce of marijuana would make. The assistant district attorney general replied he was not certain, but at least three or four, that is, enough for everyone in the defendant's car that evening. The trial judge also asked the assistant district attorney general the following:

THE COURT: Number two [in the district attorney general's letter] says, "Defendant expressed no remorse." He expressed remorse this morning; did he not?

MR. BROWN: Yes, Your Honor, but as of March 17th when he applied and when the General wrote this letter he had not.

THE COURT: Not then but now. Now the Defendant's poor work history, he says he has a job. Is that true or do you know?

MR. BROWN: Your Honor, the presentence [sic] report reflects he does have a job, right now he has a job.

THE COURT: All right, sir. The Court is going to grant him pretrial diversion.

The trial court later entered an order finding that the defendant had no prior criminal record and that "from all of the facts and circumstances it appears that the petitioner qualifies for diversion." The order further states "that considering the facts and circumstances of this case, and the criteria utilized by the District Attorney General in denying diversion to the petitioner, the District Attorney General . . . abused his discretion in not placing the petitioner in the diversion program." No other findings appear in the record.

A defendant is statutorily qualified for pretrial diversion if he or she has not previously been granted diversion; does not have a prior misdemeanor conviction for which confinement was served or a prior felony conviction within a five-year period after completing the sentence of probationary period for the conviction; and is not seeking diversion for a Class A or B felony, a sexual offense, driving under the influence, or vehicular assault. T.C.A. § 40-15-105(a)(1)(B)(i)(a)-(c) (Supp. 1998). Statutory qualification, however, does not presumptively entitle a defendant to diversion. Rather, the district attorney general possesses the discretion to grant pretrial diversion to a statutorily qualified defendant. State v. Pinkham, 955 S.W.2d 956 (Tenn. 1997). The defendant bears the burden of demonstrating suitability for pretrial diversion, and to that end, the defendant should file a formal written application and supporting documents. State v. Herron, 767 S.W.2d 151, 156 (Tenn. 1989); State v. Winsett, 882 S.W.2d 806, 809-10 (Tenn. Crim. App. 1993). In considering the defendant's application for diversion, the district attorney general must weigh the following relevant considerations: the defendant's amenability to correction; the circumstances of the offense; the defendant's

6

criminal record; the defendant's social history; the defendant's physical and mental condition "where appropriate"; and "the likelihood that pretrial diversion will serve the ends of justice and the best interest of both the public and the defendant." Pinkham, 955 S.W.2d at 959-60 (quoting State v. Hammersley, 650 S.W.2d 352, 355 (Tenn. 1983)).

If the district attorney general denies pretrial diversion, the denial must clearly articulate in writing the factors and evidence that were considered and the weight accorded to each of the factors. Pinkham, 955 S.W.2d at 960; Herron, 767 S.W.2d at 156. "That a defendant, obviously, bears the burden of demonstrating suitability for diversion does not relieve the prosecutor's obligation to examine all of the relevant factors and to set forth the required findings." State v. Curry, ___ S.W.2d ___ (Tenn. 1999)(citing Pinkham, 955 S.W.2d at 960). Failure "to consider and articulate all of the relevant factors constitutes an abuse of discretion." Curry, ___ S.W.2d at ___. The State's response to an application for pretrial diversion must reflect that the district attorney general considered all of these factors. Curry, ___ S.W.2d at ___; see Herron, 767 S.W.2d at 156.

If the district attorney general denies diversion, the defendant may seek review by the trial court through a petition for writ of certiorari. See T.C.A. § 40-15-105(b)(3)(Supp. 1998). In reviewing the district attorney general's decision, the trial court is limited to the evidence originally considered by the district attorney general. Winsett, 882 S.W.2d at 810. "The trial court may conduct a hearing only to resolve any factual disputes raised by the prosecutor or the defendant concerning the application, but not to hear additional evidence that was not considered by the prosecutor." Curry, ___ S.W.2d at ___ (citing Pinkham, 955 S.W.2d at 960).

The district attorney general's decision denying diversion is presumptively correct, and the trial court must affirm his or her decision absent abuse of discretion. See

7

Curry, ___ S.W.2d at ___; State v. Lutry, 938 S.W.2d 431, 434 (Tenn. Crim. App. 1996). Before the trial court can conclude the district attorney general abused his or her discretion, the record "must show an absence of any substantial evidence" to support the district attorney general's denial of diversion. Curry, ___ S.W.2d at ___. If the trial court's decision is appealed, the appellate court is limited to determining whether the trial court's decision is supported by a preponderance of the evidence. Curry, ___ S.W.2d at ___ (citing Pinkham, 955 S.W.2d at 960).

Here, the trial court judge improperly exceeded the scope of certiorari review by entertaining evidence not considered by the district attorney general. The trial judge allowed the defendant to admit into evidence letters written by members of the defendant's family, even though these letters appear to have been written after the district attorney general decided to deny diversion. The trial judge also allowed the defendant and his parents to testify regarding the defendant's remorse[2] and the supportiveness of his family, but again, the record indicates that this information was not made known to the district attorney general prior to his decision. By admitting improper evidence, it appears that the trial judge based his decision upon new and different evidence. Winsett, 882 S.W.2d at 809.

"Because the applicant bears the burden initially to demonstrate to the prosecutor both eligibility for and entitlement to pretrial diversion, the applicant would certainly want to provide the prosecutor with as complete an application as circumstances warrant." Winsett, 882 S.W.2d at 809-10; see Herron, 767 S.W.2d at 156. The instant case illustrates this point vividly. The record contains no evidence that the defendant ever formally applied for pretrial diversion in writing or provided any supporting

___

[2]We note that although the trial court stated that the defendant testified he was remorseful, the record does not support this. Rather, the record shows that the defendant's mother testified the defendant had told her he was remorseful, which is quite a different thing from the defendant himself testifying he was remorseful.

8

documents showing why he should be granted pretrial diversion. Even assuming the defendant did submit such information to the district attorney general, the record does not indicate the trial judge considered it in reviewing the district attorney general's decision. Thus, disregarding the information the trial judge improperly considered, i.e., the defendant's and his parents' testimony and the letters written by members of the defendant's family, the record contains no evidence to support the trial judge's determination that the district attorney general abused his discretion in denying diversion.

To the contrary, the evidence properly admitted at the hearing---the letter denying diversion, the pretrial diversion investigation report, and the incident report---does not support the conclusion that the district attorney general abused his discretion in denying diversion. Because a preponderance of the evidence in the record does not support the trial court's decision, we reverse the order placing the defendant on pretrial diversion and remand this case to the trial court for further proceedings.

_____
JOHN H. PEAY, Judge


CONCUR:


_____
JOE G. RILEY, Judge


_____
JAMES C. BEASLEY, SR., Special Judge