IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
May 2000 Session

## STATE OF TENNESSEE v. RICHARD ALLAN FRYE

**Appeal from the Criminal Court for Sullivan County**
**No. S42,445     Phyllis H. Miller, Judge**

_____

**No. E1999-01564-CCA-R9-RL**
**September 29, 2000**
_____

This appeal arises from the order of the Sullivan County Criminal Court upholding the district attorney general's refusal to accept the application of the defendant for pretrial diversion. The defendant asserts that the trial court erred in failing to determine that the district attorney general abused his discretion by relying on facts not supported by the evidence and by failing to consider all relevant factors. We conclude that substantial evidence was before the district attorney general to support the validity of each of the four factors relied on in denying pretrial diversion and that the district attorney general considered all relevant factors. Accordingly, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

Nat H. Thomas, Kingsport, Tennessee (on appeal) and Gilbert E. Torbett, Bristol, Tennessee (at trial) for the appellant, Richard Allan Frye.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and Robert H. Montgomery, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The defendant, Richard Allen Frye, appeals by permission the order of the Sullivan County Criminal Court upholding the district attorney general's refusal to accept the defendant's application for pretrial diversion. The defendant alleges that the trial court erred in failing to determine that the district attorney general abused his discretion by relying on factors not supported by any substantial evidence and by failing to fully consider all relevant factors. We conclude that the trial court properly determined that the district attorney general acted within his discretion in denying the defendant's application for pretrial diversion. Accordingly, the judgment of the trial court is affirmed.

# FACTS

The record establishes that the defendant drove James Wyant on December 5, 1998, at approximately 5:30 a.m. to a business location on Volunteer Parkway in Bristol, Tennessee. Wyant, a twenty-three-year-old, got out of the defendant's car, putting on a black, full-faced toboggan and gloves and taking a claw hammer with him. Wyant proceeded to break into a business called "Wayne's." An alarm sounded when the front door of the business was broken, and the defendant drove away. Inside "Wayne's," Wyant broke a glass display case and stole a number of Beanie Babies valued at less than $500. The owner of the building heard the alarm and, upon investigating, saw Wyant standing close to a tree on the lawn of the Bristol Tennessee Electric Company, which was next door. The owner and his son wrestled Wyant to the ground and held him until the police arrived.

Wyant's first version of the events was that a man named "Greg" had picked him up in Glade Springs, Virginia. According to Wyant, it was Greg who had the gloves, hammer, and toboggan and told him that they were going to commit a burglary. Greg was supposed to wait for him in front of the electric company and drive them both away after the burglary. Once the alarm sounded, Greg left. Wyant later admitted that the person who drove him to the scene of the burglary was the defendant. Wyant claimed that the defendant threatened to perform a sexual act on him if he did not commit the burglary and that he was afraid the defendant would harm him. He also claimed that the defendant had given him Valium and alcohol. Wyant stated that he left a change of clothes, keys, and an electronic organizer in the defendant's car. Still later, in a telephone conversation with Detective Jim Breuer, Wyant claimed that the defendant had not been involved at all. After Detective Breuer warned Wyant of the seriousness of committing perjury, Wyant admitted that the defendant had asked him to lie and corroborate the defendant's story.

The defendant claimed that he let Wyant out of the car in front of the electric company on Volunteer Parkway so that Wyant could urinate and that he had no idea Wyant planned a burglary until he heard the alarm. At that point, the defendant panicked and drove off. The defendant also disposed of all Wyant's belongings left in his car.

The defendant was indicted on March 17, 1999, for conspiracy to commit burglary, a Class E felony, and tampering with evidence, a Class C felony. The defendant, through counsel, applied for pretrial diversion, which was formally denied by letter from the Office of the District Attorney General dated June 14, 1999. The defendant filed a writ of certiorari with the Sullivan County Criminal Court in conformity with Tennessee Code Annotated Section 40-15-105(b)(3) (Supp. 1999), for review of the denial of his application, claiming that the district attorney general abused his discretion in refusing to grant the diversion request, and requesting an evidentiary hearing on the matter.[1]

---

[1] Evidentiary hearings on the petition for *certiorari* must be used "only to resolve any factual disputes raised by the prosecutor or the defendant . . ., but [trial courts are] not to hear additional evidence. . . ." State v. Curry, 988 S.W.2d 153, 157-58 (Tenn. 1999). Here, the petition for *certiorari* failed to identify any "disputed fact." Although at
(continued...)

Pursuant to the petition for certiorari, a hearing was held by the trial court on October 7, 1999. The hearing consisted solely of the arguments of counsel, defense counsel being the first to argue, and the comments and rulings of the court. No additional proof was presented. Following the hearing, the trial court determined that the district attorney general had not abused his discretion in denying the defendant's application and set the matter back on the docket. The defendant applied to the trial court for permission to appeal its order to this court, and the trial court granted permission to appeal. This interlocutory appeal is now before us for disposition.

## ANALYSIS

Our legislature has provided that the decision to grant pretrial diversion should rest within the discretion of the district attorney general. See Tenn. Code Ann. § 40-15-105; see also State v. Curry, 988 S.W.2d 153, 157 (Tenn. 1999) ("[W]hether to grant pretrial diversion to a qualified defendant who is statutorily eligible is a determination that lies in the discretion of the district attorney general."). The discretion vested in the prosecutor is not unbridled; "[i]t must be exercised so as to serve the interests of justice." Pace v. State, 566 S.W.2d 861, 864 (Tenn. 1978). Thus, upon proper application of the defendant, the decision of the prosecutor is subject to review by the trial court for abuse of prosecutorial discretion. See Tenn. Code Ann. § 40-15-105(b)(3). The decision of the prosecutor is presumptively correct, and the trial court will reverse that decision only upon a showing by the applicant that there has been a patent or gross abuse of prosecutorial discretion. See State v. Houston, 900 S.W.2d 712, 714 (Tenn. Crim. App.), perm. app. denied (Tenn. 1995) (citing State v. Hammersley, 650 S.W.2d 352, 356 (Tenn. 1983)). An abuse of discretion in this context requires that the record show "an absence of any substantial evidence to support the refusal of the District Attorney General to enter into a memorandum of understanding." Hammersley, 650 S.W.2d at 356; see also Curry, 988 S.W.2d at 158 ( noting that the record "must show an absence of any substantial evidence to support the refusal of the district attorney general to enter into a memorandum of understanding before a reviewing court can find an abuse of discretion").

Our supreme court has observed that "[t]he task thus imposed upon prosecutors of deciding which defendants are worthwhile candidates for diversion is indeed a demanding one." Hammersley, 650 S.W.2d at 353. It is demanding because, as stated by our supreme court:

> Almost all criminal defendants, whether first offenders or not, would claim remorse and ascribe to themselves a desire to walk the straight and narrow if presented an opportunity to avoid prosecution; the responsibility placed upon prosecutors to pick and choose among the lot based upon a particular candidate's amenability to rehabilitation or recidivism requires the exercise of unusual powers of discrimination.

---

[1](...continued)
the hearing the parties disputed, initially, certain aspects of the defendant's prior conviction for reckless driving, the defendant's petition for *certiorari* itself failed to justify the holding of a hearing.

Id. While our legislature has defined a "qualified defendant" as one who meets statutory requirements set out in Tennessee Code Annotated Section 40-15-105(a)(1)(B)(i),[2] the courts have provided guidance to prosecutors in determining which defendants among those who pass the statutory requirements are then suitable for pretrial diversion. See Curry, 988 S.W.2d at 157 ("One who is statutorily eligible is not presumptively entitled to diversion."). The factors that are relevant to the prosecutor's determination should focus on the defendant's "amenability to correction." Id. (quoting State v. Pinkham, 955 S.W.2d 956, 959-60 (Tenn. 1997)). With this focus in mind, the prosecutor should consider the following:

> [T]he defendant's criminal record, social history, the physical and mental condition of a defendant where appropriate, and the likelihood that pretrial diversion will serve the ends of justice and the best interest of both the public and the defendant.

Id. (relying on Hammersley, 650 S.W.2d at 355). Pretrial diversion represents the benevolence of the State in that diversion may result in dismissal of the prosecution and expungement of the defendant's record.[3]

---

[2] According to this section, a "qualified defendant" must meet each of the following requirements:

> (a) The defendant has not previously been granted pretrial diversion under the provisions of this chapter;
> (b) The defendant does not have a prior misdemeanor conviction for which a sentence of confinement is served or a prior felony conviction within a five-year period after completing the sentence or probationary program for such prior conviction; and
> (c) The offense for which the prosecution is being suspended is not a Class A or Class B felony, a sexual offense, driving under the influence of an intoxicant as prohibited by § 55-10-401, or vehicular assault as prohibited by § 39-13-106.

[3] The applicable law states:

> DISMISSAL WITH PREJUDICE. The trial court shall dismiss with prejudice any warrant or charge against the defendant upon the expiration of ninety (90) days after the expiration of the period of suspension specified in the memorandum of understanding is filed; provided, that no termination of the memorandum of understanding has been filed under the provisions of subsection (d). If the prosecution is dismissed with prejudice, jeopardy shall attach, and the court shall make a minute entry to that effect. Upon dismissing any warrant or charge against the defendant pursuant to this section, the judge shall send or cause to be sent a copy of the order of dismissal to the Tennessee Bureau of Investigation for entry into its expunged criminal offender and pretrial diversion database. Such order shall include the name of the defendant, the defendant's date of birth and social security number, the offense for which diversion was granted, the date diversion

(continued...)

If the decision is to refuse to enter into a memorandum of understanding for pretrial diversion, the prosecutor's response must be formal and in writing, given the limited nature of certiorari review, and should include:

>  (1)  An enumeration of all the evidence considered;
>
>  (2)  An enumeration of the relevant factors considered and how some factor or factors controlled the decision or outweighed other factors;
>
>  (3)  An identification of any disputed issues of fact.

See id.; see also State v. Winsett, 882 S.W.2d 806, 810 (Tenn. Crim. App. 1993). The only evidence the trial court may consider on a grant of certiorari is the evidence that was considered by the district attorney general. See Curry, 988 S.W.2d at 157 (citing Winsett, 882 S.W.2d at 810). A hearing in this context should be "only to resolve any factual disputes raised by the prosecutor or the defendant concerning the application, but not to hear additional evidence that was not considered by the prosecutor." Id. A hearing "may be useful to clarify matters already in the record about which there may be some dispute." Winsett, 882 S.W.2d at 810. The role of the trial court is to determine whether or not there is any substantial evidence in the record to support the prosecutor's refusal to enter into a memorandum of understanding for pretrial diversion because if there is any substantial evidence, the prosecutor cannot, as a matter of law, have abused his discretion in denying diversion.

## ISSUES

### A. Letter of Denial

The defendant challenges all four of the reasons stated in the letter denying his application for pretrial diversion, arguing that no evidence supported the reasons stated by the district attorney general. The State argues to the contrary, stating that substantial evidence supports each of the reasons on which the decision was based.

The assistant district attorney general, on behalf of the district attorney general, stated in his letter that a review had been made of the presentence report, the facts the State would have available in a trial, and all letters of support. Based on this review, the district attorney general denied the defendant's application.

The first reason stated in the letter of denial is the following:

---

[3](...continued)
  was granted and the date the charge or warrant was dismissed.

Tenn. Code Ann. § 40-15-105(e) (Supp. 1999).

1.  Mr. Frye has a history of prior criminal activity. This is evidenced by a conviction for Reckless Driving, reduced from a charging of Driving Under the Influence, on May 18, 1994.

The defendant argues that this offense was minor in nature and was the single offense noted by the prosecutor in his letter. The defendant does not dispute any specific offense included in the presentence report. The trial court noted that the question was, "[I]s there substantial evidence in the materials considered by the District Attorney to support reason number one (1) for denial of pretrial diversion, that you have a history of prior criminal activity." The trial court pointed to the fact that the reckless driving charge was in Tennessee, not in Virginia, as counsel for the defense erroneously assumed.[4] The trial court noted that the defendant was initially charged with DUI on May 18, 1994, but pled guilty to the lesser offense of reckless driving. The defendant does not dispute the fact that the reckless driving plea was reduced from a DUI arrest. The trial court also noted that the defendant's record included a speeding violation in 1987 and a failure to pay a fine in 1991. While the trial court noted that these were not major offenses, it did note the seriousness of the DUI arrest. Although the prosecutor discussed the defendant's drug use as a separate reason, the trial court emphasized that the defendant's use of cocaine in 1983 and again in 1993 violated the law. The trial court also noted the defendant's admitted use of marijuana on an occasional basis from 1980 until 1992 or 1993. The trial court asked the defendant if he disputed the illegality of the use of these drugs, and the defendant responded in the negative.

Although the prosecutor's citing of a single offense, reckless driving, in his letter hardly constitutes a "history of prior criminal activity," we cannot say that the trial court erred in concluding from the materials relied upon by the prosecutor that there was substantial evidence to support the first factor.

The second reason was described by the prosecutor in the following way:

2.  Mr. Frye has a history of the illegal use of drugs. This is based on the fact that Mr. Frye, in his report, admits to the illegal use of cocaine during 1983, as well as during 1993. In addition, Mr. Frye also admits to the illegal use of marijuana on occasion from 1980 until 1992 or 1993.

The defendant does not dispute any aspect of this factor, arguing only that the fact that he came forward with this information when he could have just lied should weigh in his favor. The State found that such an argument for pretrial diversion—the fact that the defendant could have lied—was, at best, anomalous. While the State acknowledged that the defendant admitted the illegal drug use, the State further argued that the illegal drug was more a contraindication for diversion than

---

[4]The defendant initially argued that the Virginia statute for reckless driving described an offense less serious than the Tennessee statute.

a positive reflection on the defendant's honesty. The trial court determined that substantial evidence before the prosecutor indicated that the defendant has a history of illegal use of drugs. We agree.

The third reason cited by the prosecutor is the following:

> 3. Mr. Frye has demonstrated that he is unable to maintain good behavior while under supervision or on release into the community. This is evidenced by the fact that on December 1, 1998, Mr. Frye's law license was suspended for 6 months for "mishandling of client trust funds" and he was placed on supervision by the State Bar of Virginia. The offense in this case occurred on December 8 [sic], 1998, only 7 days after his suspension order was entered. In addition, Mr. Frye was cited on December 19, 1991, and convicted on May 8, 1992, for failure to pay a fine.[5]

The defendant, while not disputing the facts concerning his suspension from the practice of law,[6] argues that the State should have placed more emphasis on the fact that he successfully completed the six months of suspension and had his license reinstated on June 1, 1999, and on the fact that the events which formed the basis of his suspension occurred more than four years ago, in 1993 and 1994. The State counters that neither the successful completion of the period of suspension nor the dates of the disciplinary violations themselves is a key issue; the fact that the defendant's license was suspended for serious ethical breaches in the first place is key. The defendant committed the offenses of conspiracy to commit burglary and tampering with evidence four days after the suspension of his license on December 1, 1998.[7] The trial court determined that there was substantial evidence to support reason three.

We note that the agreement between the Virginia State Bar and the defendant set out specific terms and conditions, the violation of any one of which would result in revocation of the defendant's license to practice law. The terms do not specifically prohibit criminal conduct. Nevertheless, the State interprets the last sentence of the agreed disposition to mean that the defendant's license to practice law would be revoked for receiving "any other sanction imposed for misconduct during the

---

[5] The defendant avers that this citation and conviction involved a parking ticket.

[6] Evidence before the Virginia State Bar Disciplinary Board showed that the defendant on three separate occasions misappropriated clients' funds from his trust account, failed to maintain adequate trust account records, failed to follow the required trust account procedures, and failed to prosecute matters on which he was engaged with dispatch. The defendant was placed under strict monitoring by the Virginia State Bar in May 1995.

[7] The record shows that the defendant's license to practice law in Virginia was suspended for a period of five years, beginning on December 1, 1998, and that four years and six months of that suspension were suspended, conditioned on the defendant's strict compliance with terms agreed to by the defendant and the Virginia State Bar.

probationary period."[8] While the wording is ambiguous, we agree that the defendant's involvement in two felonies indicated a clear disregard of the spirit of his probationary period granted by the Virginia State Bar. We conclude that the trial court did not err in determining that substantial evidence existed in the materials considered by the prosecutor to support reason three.

Reason four is set out by the prosecutor as follows:

> 4. Mr. Frye as an attorney has an obligation under the Canon of Ethics and his oath as an attorney to maintain the integrity of the legal profession and to refrain from engaging in conduct which is prejudicial to the administration of justice. As a result, Mr. Frye has a professional obligation that is higher than other citizens. In his statement to the police, Mr. Frye admits to disposing of items belonging to his co-defendant, James D. Wyant, knowing that he had committed the crime of Burglary. These were items that could have been used by the police to tie Mr. Wyant to the scene of the crime. By disposing of these items[,] Mr. Frye kept the police from discovering and using them in the prosecution of Mr. Wyant.

The defendant argues that the State is excluding all members of the legal profession as proper candidates for pretrial diversion. The State counters that any such reading is too broad. Rather, the prosecutor is simply pointing to the particular circumstances of the criminal offenses as indicating that the defendant, in spite of his heightened duty to the legal system, deliberately disposed of evidence belonging to Wyant, with full knowledge that Wyant had committed a burglary. The trial court noted that "as an attorney, not a brand new attorney, but an experienced attorney, and a thirty-nine (39) year old man, Mr. Frye made a decision here, apparently, to not only thwart the connection or break the connection with him to the burglary, but to also prevent the police from finding the items." The trial court further noted that even if the facts were as the defendant claimed, that is, he had no idea that Wyant planned to commit a burglary but let him out of the car to urinate, the defendant still failed to report the burglary. The trial court also cited case law for the proposition that the prosecutor appropriately considered the special position of an attorney in denying pretrial diversion. See State v. Pinkham, 955 S.W.2d 956, 958-59 (Tenn. 1997) (affirming denial of pretrial diversion where attorney resigned from California Bar while disbarment proceedings were pending and subsequently practiced law in Tennessee without a license).

We conclude that substantial evidence supported reason four.

## B. Consideration of All Relevant Factors

---

[8] The wording is, "The revocation of Respondent's license to practice law shall be in addition to any other sanction imposed for misconduct during the probationary period."

The defendant asserts that the prosecutor abused his discretion in denying his application for pretrial diversion by failing to consider all relevant factors, specifically the defendant's good reputation and amenability to rehabilitation. The defendant also argues that the prosecutor's letter failed to properly explain why the factors relied upon outweighed all other positive factors. The State responds, noting that the prosecutor did acknowledge defendant's favorable history, but concluded that the considerations against diversion outweighed any favorable considerations and that the interests of society and the defendant would best be served by denying the defendant's request for pretrial diversion.

The denial letter specifically states that the prosecutor relied upon the diversion request, the facts of the matter, the presentence report, and letters provided on behalf of the defendant. After setting out the reasons that the request was being denied, the letter concluded:

> The above considerations must be weighed against other factors in deciding eligibility for pre-trial diversion. I am aware that Mr. Frye is a law school graduate and has practiced law since 1985. I am also aware that Mr. Frye was cooperative with police and gave a voluntary statement when contacted by the police. I am also aware that Mr. Frye also has support among his acquaintances and professional colleagues.
>
> However, as I have previously stated, I believe that the considerations against diversion outweigh any favorable considerations and that the interests of society and this individual are better served by denying his request for pre-trial diversion.

Criteria for the letter of denial are judicially imposed. Our supreme court has made it imminently clear that this letter must be more than a mere "abstract statement." State v. Herron, 767 S.W.2d 151, 156 (Tenn. 1989). "[O]nly by analyzing all of the relevant factors, including those favorable to the defendant, can appropriate candidates for this legislative largess be identified in a manner consistent with the purpose of the pretrial diversion act." State v. Curry, 988 S.W.2d 153, 158 (Tenn. 1999). If the district attorney general bases the decision on factors felt to outweigh others submitted for consideration, there must be an indication why those factors outweigh others. See Herron, 767 S.W.2d at 156. The prosecutor did acknowledge the defendant's education and practice of law since 1985. He also noted the defendant's cooperation with the police and the letters of support submitted by friends and colleagues.[9] The prosecutor finally concluded that "the considerations against diversion outweigh any favorable considerations and that the interests of

---

[9]The trial court was puzzled by the letter of support from Dennis L. Godfrey, Commonwealth of Virginia's Attorney for Washington County, a position he had held for the past fifteen years. In the letter, Mr. Godfrey stated that he had known the defendant since he began practicing in his jurisdiction. Mr. Godfrey indicated that "[a] review of the local records in this county do [sic] not reveal any criminal convictions for Mr. Frye." While this may be technically accurate, the trial court noted that the record showed that the defendant was arrested on July 1, 1998, for one offense and on June 1, 1997, for three offenses. All cases were *nolle prosequied*, apparently by Mr. Godfrey's office.

society and this individual are better served by denying his request for pre-trial diversion." Although the denial letter could have been more complete and explanatory, we conclude that it minimally shows that the prosecutor considered all relevant factors and the reasons each was weighed as it was. Accordingly, we concur with the conclusion of the trial court that the district attorney general did not abuse his discretion in denying diversion to the defendant.

## CONCLUSION

We conclude that there is substantial evidence to support the district attorney general's denial of pretrial diversion, and therefore, the district attorney general did not abuse his discretion in refusing to enter into a memorandum of understanding for pretrial diversion with the defendant. Accordingly, the judgment of the trial court is affirmed.

_____
ALAN E. GLENN, JUDGE