IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 14, 2006

## STATE OF TENNESSEE v. FRANK RAY RUTH

**Appeal from the Criminal Court for Hamilton County**
**No. 252627     Rebecca J. Stern, Judge**

---

**No. E2006-01008-CCA-R10-CD - Filed February 5, 2007**

---

The Defendant, Frank Ray Ruth, was indicted for thirty-seven counts of filing false sales tax returns and one count of Class C felony theft of property. The district attorney general denied the Defendant's application for pretrial diversion. The trial court reversed, concluding that the district attorney abused his discretion. The State obtained an interlocutory appeal from this Court pursuant to Tennessee Rule of Appellate Procedure 10. Following our review of the record, the judgment of the Hamilton County Criminal Court ordering the district attorney general to grant the Defendant diversion is reversed. This case is remanded to the trial court for further proceedings.

### Tenn. R. App. P. 10 Extraordinary Appeal; Judgment of the Criminal Court Reversed; Remanded

DAVID H. WELLES, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

H. Wayne Grant, Chattanooga, Tennessee, for the appellee, Frank Ray Ruth.

Robert E. Cooper, Jr., Attorney General and Reporter; David E. Coenen, Assistant Attorney General; Bill Cox, District Attorney General; and Bates Bryan, Assistant District Attorney General, for the appellant, State of Tennessee.

### OPINION

The Defendant owned and operated Sports Wine & Spirits located in Hixson. Tax Auditor Timothy Kelly performed an audit of the Defendant's business by inspecting records from December 1, 2000, to December 31, 2003. After discovering potential fraud by the Defendant, Mr. Kelly referred the case to the Special Investigation Section of the Department of Revenue. During the ensuing investigation, it was discovered that, for the entire audit period—thirty-seven months—the Defendant underreported the amount of taxable sales of the business by $570,744.28, resulting in

$50,198.80[1] of sales tax collected by the Defendant but not remitted to the State. In February of 2005, a Hamilton County grand jury returned an indictment against the Defendant for thirty-seven counts of filing false sales tax returns, Class E felonies, and one count of theft of property valued at $10,000 or more but less than $60,000, a Class C felony. See Tenn. Code Ann. §§ 39-14-103, 39-14-105, 67-1-1440(d).

The Defendant filed an application for pretrial diversion contending he was "a prime candidate" for pretrial diversion. In support of his application, the Defendant stated that he was sixty-seven years old, had been married for forty-six years, had raised two sons and had supported them through college, and had "been a productive member of society all of his life." He noted that he had no prior criminal history other than a speeding ticket and that he had an excellent employment history—working eighteen years as a superintendent for Concrete Farms until the company went out of business and then working eight years as a superintendent for Siskin Steel until his retirement. He explained that he was actively involved in civic organizations throughout his lifetime, including being president of the Civitan Club; a member of the JayCee's; co-founder and president of the Tyner Youth Association, which involved his participation in coaching sports; and chairman of the youth committee for the Mountain Shadows community. The Defendant stated that, following an offer from "some acquaintances," he purchased the liquor store in 1996 and that this was the first time he had operated his own business. According to the Defendant, he cooperated with investigators at all times during the investigation—making "no attempt to conceal any evidence," expressing "his willingness to make full restitution," waving his right to counsel, and opening "his records to complete disclosure." The Defendant noted that he told the investigators that credit card sales were handled differently than cash receipts. He claimed that his conduct constituted a "single act" and that he was "in every respect repentant, confessing and for which he is making full restitution and should be considered as if the taking took place on one return for one month for the accumulated amount set forth in the indictment." Finally, the Defendant asserted that there was "no likelihood" that he would be a "repeat offender" because he was no longer responsible for reporting the monthly sales tax for the business and had turned all management of the store over to his son; he also expressed a "willingness to discontinue working at the store once his son c[ould] obtain a liquor license."

Attached to the application was an affidavit of the Defendant, three letters of recommendation, and a copy of a Department of Revenue document titled "Memorandum for the File," which provided details of an interview with the Defendant on December 15, 2004. According to the memorandum, the Defendant explained that "he may not have reported all of the credit card sales because they were handled differently." He further stated that "the credit card sales had indeed been deposited in the same bank as the cash receipts and he had access to the money." The Defendant also could not provide an explanation as to why the sales of the business reported on the federal returns did not match the sales reported on the state returns but stated that his son prepared

---

[1]We note that there are some discrepancies in the record as to the actual amount owed. The final report of the Department of Revenue quotes different amounts—$50,198.80 and $50,256.00. The amount of the restitution check was $50,205.80.

-2-

the federal returns while he prepared the state returns. He asserted that "he always did what he thought was right and never intentionally underreported his sales."

The Defendant later amended the application. The amendment was a copy of a check made payable to the Department of Revenue evidencing restitution of the sales tax owed.

On July 15, 2005, the district attorney general denied the Defendant's request for pretrial diversion. In the letter, the assistant district attorney gave the following reasons for denial:

### The Defendant's Personal Background
The defendant is a sixty-seven year old male who has been married for forty-six years. He has worked his entire life holding jobs with significant amounts of responsibility and providing well for his family. He has been an active member of his community and has devoted a significant amount of his life to civic and charitable works.

### Criminal History
The defendant has no prior criminal history.

### The Case at Hand
The facts of this case are particularly described in the attached "Investigative report."

### Analysis
This case is not a case where someone "slipped up" one day, or had a brief moral lapse, or exhibited the type of non-characteristic although illegal activity that the pre-trial diversion statutes are intended to address. This case involved the continuous filing of false tax reporting forms for the entire 37 months of the audit period, which represents only 3 years of the seven years that the defendant operated the business, although the probability that the fraudulent activity preceded the audit period is great. After or during the audit the defendant was untruthful with investigators. The defendant's crime involved theft from the citizens of Tennessee. Our tax system is based largely on self reporting and depends upon deterrence for assured compliance.

As a result of the Defendant's long term, sustained, intentional violation of the law, his lack of honesty when being interviewed, and the need for deterrence in order to enforce the tax laws the defendant's request for diversion is denied.

Attached to the district attorney's letter was the final investigative report of the Department of Revenue. The report provided a summary of the Defendant's June 24, 2004 interview with

investigators. During the interview, the Defendant stated that he used a "point of sale" computer system, that the software automatically charged sales tax, that the computer kept track of inventory and sales, and that the computer produced reports for each day, month, and year. The Defendant admitted that he prepared the state returns and claimed that he used the business' bank deposits to prepare his monthly returns. He stated that the "amount of the deposit slips for each month should equal his gross sales amount on the sales tax returns." However, it was noted that, after a comparison of bank deposits with the amount of taxable sales reported on the sales tax returns, the results conflicted with the Defendant's statement that deposits should equal the amount of taxable sales reported and the amount of the excess deposits supported the taxable sales as computed by investigators for criminal purposes. The Defendant was asked if he ever collected sales tax that he did not remit to the State, and he replied "probably, but not knowingly or intentionally" and any difference was only a mistake. The report noted the following facts related to intent:

> 1. The "Point of Sale" computer system's sales reports showed [the Defendant] had underreported the business' sales on each of the thirty-seven (37) sales tax returns during the period of the investigation. The amount underrreported each month was consistent throughout the period.

> 2. [The Defendant] stated he used the bank deposits to prepare the sales tax returns for Sports Wine & Spirits each month. In fact, a comparison of bank deposits ($3,225,747.00) to sales tax returns (2,579,363.00) showed [the Defendant] gave misleading statements when interviewed by Special Investigators.

> 3. When computing the sales tax liability for each month, it was discovered that the amounts underrreported were usually rounded amounts, mostly $1,000. The consistent liability each month demonstrated [the Defendant] was backing into taxable sales to arrive at a sales tax amount he failed to remit. The following table shows the rounded amounts for the year 2002. This was very consistent for the entire criminal period.

> [Table omitted].

> 4. [The Defendant] intentionally filed false and fraudulent sales tax returns to the State, while reporting correctly on the Federal Income Tax Returns.

It was also noted that the Defendant was unable to explain the difference between the bank deposits and the amount of sales that he reported to the State. The investigators concluded,

> [The Defendant] blatantly and brazenly underreported the taxable sales by consistent rounded even dollar ($1,000, $1,500, & $2,000) amounts each month, which resulted in lowering his sales tax liability to the State. To accomplish this he decided how much he wanted to steal (usually $1,000). Then he reduced his sales tax

-4-

collected by that amount and rounded it to the nearest whole dollar and reported this as the sales tax paid. He broke down the total sales tax paid by the state and local amounts. [The Defendant] then had to reduce the taxable sales by the amount equivalent to the tax on the amount he was stealing. Prior to July 2002 when the rate was 8.25%, for $1,000 this amount was about $12,121. After July 2002 when the rate jumped to 9.25%, for $1,000 this amount was about $10,811. In July 2002 the tax rate changed during the month, but [the Defendant] was still able to make the calculation to reduce his liability by $1,000—even. It doesn't appear that [the Defendant] used any complex formula he just guessed at the taxable sales until he got it close enough.

On July 28, 2005, the Defendant filed a petition for writ of certiorari and a memorandum in support of that petition, contending that the district attorney general abused his discretion by denying pretrial diversion. The Defendant argued that the district attorney failed to consider his lack of a criminal record, age, favorable social history, and "obvious" amenability to correction and, moreover, that the district attorney did not articulate or state why the factors considered outweighed the other relevant factors. The trial court granted the Defendant's petition on September 26, 2005, and remanded the matter to the district attorney for reconsideration. The trial court reasoned that the district attorney did not address the Defendant's amenability to correction, full restitution, or "withdrawal from preparation of sales tax returns for and management of the business" and, therefore, "easily" found an abuse of discretion for failing to consider all relevant factors.

The district attorney again denied pretrial diversion by written letter dated October 13, 2005. The district attorney reasoned as follows:

The Judge has issued an order remanding the pre-trial diversion application back to us to consider several additional factors, which the court felt we did not consider previously.

The original letter of denial addressed:

(1) The circumstances of the offense;
(2) The defendant's prior history;
(3) The deterrent effect of punishment upon other criminal activity
and;
(4) The likelihood that pre-trial diversion would serve the ends of justice.

In regard to the remaining issues cited by the court, the state finds that the Defendant's attitude and post-audit behavior was poor at best. There was no offer to pay restitution until well after indictment; in fact, it was after the defendant's application for pre-trial diversion was filed.

In weighing all of the factors involved in making a determination, the state finds that the payment of restitution only after indictment and after an application for pre-trial diversion and after the defendant's counsel had reviewed the discovery materials and it was blazingly clear that the case against the defendant was solid was only an acceptance of the inevitable and not something that denotes any positive character trait on the part of the defendant, and, therefore, this factor carries little if any weight for the defendant's position; further, if the defendant actually had any remorse or desire to satisfy a guilty conscience he would go back and look at the pre-audit period and pay restitution for those years as well; further, it bears pointing out that the amount involved here was sales tax actually collected by the defendant from customers but stolen by the defendant prior to returns being filed with the state.

The court has directed that the state address the amenability of the defendant to correction. As previously stated in the denial letter, the defendant was untruthful with investigators, which goes directly to that issue. The Tennessee Department of Revenue on November 23, 2004, informed the defendant of the recommendation for criminal prosecution. On December 15, 2004, the defendant explained that the used bank deposits to fill out his returns each month, however, $3.3 million dollars had been deposited but only $2.6 million had been reported to the state; further the sales reported to the state were $638,000.00 less than the sales reported to the federal government. In short given this type of reaction by the defendant to the investigation and his continual "stonewalling" as indicated by the investigative report attached to the denial letter, showed a clear intent by the defendant to continue to hide any wrongdoings on his part. The state further relied upon the entire investigative report including the many documents making the approximately 500 pages of exhibits which show with some detail how for years the defendant stole the tax money which he had collected and how he attempted to continue to fool the investigators once he was caught.

The defendant claims that he has transferred management to his son; the state finds this to bear little or no weight.

After careful consideration and weighing all of the relevant factors, the consideration of the defendant's background, social history, all the facts and circumstances of the case, the crime itself, the need for deterrence, the ends of justice, and the historical evaluation of pre-trial diversion, it is clear that the weight of the decision is heavily for the denial of pre-trial diversion; this is not to say that the defendant does not have some issues which weigh in his favor only that they are outweighed by the negative factors. Pre-trial diversion is denied.

The Defendant then filed a "Supplemental Response and Reply to Action of District Attorney Refusing Diversion on Remand by Court," which the trial court treated as a second petition for writ of certiorari. The Defendant again contended that the district attorney general abused his discretion by denying his request for pretrial diversion because the district attorney had not "consider[ed] and articulate[d] all the relevant factors" and had failed to "provide the relative weight of each factor . . . ."

On March 6, 2006, the trial court granted the Defendant's petition and ordered the district attorney to grant the Defendant's application for pretrial diversion. The trial court explained its decision that district attorney abused his discretion as follows:

Together, the prosecutor's letters of denial reflect consideration of all relevant factors. The Court summarizes the findings set forth therein as follows:

*Factors that support application*

Lack of a criminal record
Personal history, including marriage and family
Occupational history
Social history, including leadership roles in community organizations and
        charitable acts
Reputation
(Restitution)[2]
(Withdrawal from preparation of sales tax returns for and management of
        business)

*Factors that support denial of application*

Nature of the offenses
Untruthfulness with investigators
Need for deterrence

About the findings that support the application or at least do not support denial of the application, there is no dispute. Furthermore, as the order remanding the application for reconsideration indicates, the Court does not think that two of the three factors that support denial of the application, the nature of the offenses and the need for deterrence, by themselves, outweigh the factors that support the application. Thus, the only issues that the denial of the application now presents is whether substantial evidence supports the finding that the defendant was untruthful with investigators and, if it does, whether substantial evidence supports the finding that that circumstance outweighs all the factors that support the application.

[2]Parentheses indicate a factor to which the prosecutor gives little or no weight. (footnote in original).

-7-

. . . In the absence of evidence of some unintentional mistake, the assertion is not credible. The Court therefore finds that substantial evidence supports the prosecutor's finding that the defendant was, at least in part, untruthful with investigators.

. . . In this case, the state's case being strong, the defendant's untruthfulness with investigators weighs against him.

Nevertheless, despite the strength of the state's case, the Court respectfully disagrees with the prosecutor's finding that the defendant's untruthfulness with investigators justifies denial of the application for pre-trial diversion. . . . Furthermore, even though he was untruthful with investigators in one respect, in others, he was truthful, admitting that total sales and sales tax returns should agree and that he may not have reported all credit sales, *i.e.*, making admissions inconsistent with his assertion of innocence of intentional mistake. For these reasons, the Court finds the defendant, on the whole, amenable to correction and, as a consequence, denial of the application unnecessarily harsh.

(internal footnote omitted). Pursuant to Tennessee Rule of Appellate Procedure 10, it is from this determination that the State now appeals.[3]

## ANALYSIS

The pretrial diversion statute allows a district attorney general to suspend the prosecution of an eligible defendant for a period not to exceed two years. <u>See</u> Tenn. Code Ann. § 40-15-105(a)(1)(A). In order to qualify for pretrial diversion, a defendant must not have been previously granted pretrial or judicial diversion; must not have a prior misdemeanor conviction for which the defendant served a sentence of confinement or a prior felony conviction within a five-year period after completing the sentence or probationary period for the prior conviction; and must not be seeking diversion for a Class A or B felony, certain Class C felonies (not involved in this case), a sexual offense, driving under the influence, or vehicular assault. <u>Id.</u> § 40-15-105(a)(1)(B)(i)(a)-(c).

There is no presumption that a person eligible for pretrial diversion is entitled to diversion. <u>State v. Yancey</u>, 69 S.W.3d 553, 557 (Tenn. 2002); <u>State v. Curry</u>, 988 S.W.2d 153, 157 (Tenn. 1999). The "defendant bears the burden of establishing that pretrial diversion is appropriate and in the interest of justice"; therefore, it is the responsibility of the defendant to provide "substantial favorable evidence for the district attorney general's consideration." <u>State v. Bell</u>, 69 S.W.3d 171, 179 (Tenn. 2002). To carry the burden, an applicant should provide the prosecutor with "as

---

[3]The State sought application for permission to appeal from the trial court under Tennessee Rule of Appellate Procedure 9, which the trial court denied. The State thereafter applied to this Court for extraordinary appeal by permission pursuant to Tennessee Appellate Procedure Rule 10, and we granted the application.

complete an application as the circumstances warrant." State v. Winsett, 882 S.W.2d 806, 810 (Tenn. Crim. App. 1993).

The decision to grant or deny an application for pretrial diversion rests within the discretion of the district attorney general. Tenn. Code Ann. § 40-15-105(b)(3). The district attorney's decision is viewed as "presumptively correct" and will not be set aside unless there is a finding of gross and patent abuse of discretion. State v. Hammersley, 650 S.W.2d 352, 356 (Tenn. 1983).

Even though the defendant has the burden to demonstrate his or her eligibility and suitability for pretrial diversion, the prosecutor has specific obligations, especially when he or she denies the application. Curry, 988 S.W.2d at 157. Our appellate courts have forged the following guidelines for prosecutors' use when considering applications for pretrial diversion:

> (1) The prosecutor should focus on the defendant's amenability to correction. [Curry, 988 S.W.2d at 156.]

> (2) The prosecutor must consider (a) the circumstances of the offense, (b) the defendant's criminal record, (c) the defendant's social history, (d) the physical and mental condition of the defendant where appropriate, and (e) the likelihood that pretrial diversion will serve the ends of justice and the best interests of both the public and the defendant. Id.; Hammersley, 650 S.W.2d at 355; see also State v. Washington, 866 S.W.2d 950, 951 (Tenn. 1993).

> (3) "[T]he circumstances of the offense and the need for deterrence may alone justify a denial of diversion, but only if [(a)] all of the relevant factors have been considered as well," Curry, 988 S.W.2d at 158, and (b) only when the circumstances are of such overwhelming significance that they necessarily outweigh all other factors, Washington, 866 S.W.2d at 951.

> (4) Although this court has affirmed the denial of pretrial diversion where the failure to admit the crime and/or express remorse revealed that the defendant had been less than truthful with the court, see State v. Karen Sue Kelsey, No. 03C01-9603-CC-00117, slip op. at 7 (Tenn. Crim. App., Knoxville, Oct. 29, 1997), perm. app. denied (Tenn. 1998); State v. Martha Jean Frasier, No. 01C01-9601-CC-00012, slip op. at 12-13 (Tenn. Crim. App., Nashville, Dec. 13, 1996); State v. Nease, 713 S.W.2d 90, 92 (Tenn. Crim. App. 1986), remorse per se is not a factor in determining suitability for pretrial diversion, see State v. Stoney Gene Golden, No. 88-146-III, slip op. at 3 (Tenn. Crim. App., Nashville, Apr. 12, 1989), perm. app. denied (Tenn. 1989), and the failure of the defendant to admit guilt is not, in and of itself, a proper basis for denying diversion, see State v. Dewey L. Clark, No. 03C01-9706-CR-00227, slip op. at 7 (Tenn. Crim. App., Knoxville, July 16, 1998); State v. Christie Quick, No. 01C01-9510-CC-00323, slip op. at 5-6 (Tenn. Crim. App., Nashville, Feb. 20, 1997); cf. State v. King, 640 S.W.2d 30, 33 (Tenn.

Crim. App. 1982) (pretrial diversion cannot be conditioned upon entry of guilty plea), overruled on other grounds by State v. Sutton, 668 S.W.2d 678, 680 (Tenn. Crim. App. 1984).

(5) A denial of the application (a) must be in writing and (b) must contain not only an enumeration of the evidence the prosecutor considered but also a discussion of the weight given to each factor, State v. Pinkham, 955 S.W.2d 956, 960 (Tenn. 1997); see Curry, 988 S.W.2d at 157 (explaining importance of detailed, written denial); Winsett, 882 S.W.2d at 810, and of why unfavorable factors outweigh favorable ones, [State v.] Herron, 767 S.W.2d [151,] 156 [(Tenn. 1989), overruled in part by Yancy, 69 S.W.3d at 559].

(6) "In addition to the foregoing items which the prosecutor should include in a written record, he or she should also identify 'any factual disputes between the evidence relied upon and the petitioner's application.'" Pinkham, 955 S.W.2d at 960; see Winsett, 882 S.W.2d at 810.

If the application is denied, the defendant may seek a writ of certiorari in the trial court. Tenn. Code Ann. § 40-15-105(b)(3) (2003). The Code and the appellate courts have prescribed the procedure for the petitioner to follow:

(1) The compiled record should be attached to the petition. Winsett, 882 S.W.2d at 810.

(2) In the petition, the defendant should identify any disputed facts which the prosecutor has not identified. State v. Lane, 56 S.W.3d 20, 26 (Tenn. Crim. App. 2000).

(3) The defendant has the burden of proving that the district attorney abused his or her discretion in denying diversion, State v. Watkins, 607 S.W.2d 486, 488 (Tenn. Crim. App. 1980), a process that may entail showing an absence of any substantial evidence in the record to support the prosecutor's denial of pretrial diversion, Lane, 56 S.W.3d at 26; see State v. Houston, 900 S.W.2d 712, 714 (Tenn. Crim. App. 1995).

Upon receiving a petition for certiorari filed by an aggrieved applicant for pretrial diversion, the trial court must then follow a prescribed procedure:

(1) The trial court limits its consideration to the evidence which was before the prosecutor and to the reasons given by the prosecutor in denying diversion. State v. Brown, 700 S.W.2d 568, 570 (Tenn. Crim. App. 1985); Winsett, 882 S.W.2d at 809.

(2) The trial court may conduct a hearing only to resolve any factual disputes raised by the prosecutor or the defendant; the court may not hear additional evidence. Curry, 988 S.W.2d at 157-58.

(3) The trial court must also adhere to the same case-by-case balancing procedure that is imposed upon the prosecutor. Herron, 767 S.W.2d at 156.

(4) The trial court must state its findings in writing. Id.

State v. Kristi Dance Oakes, No. E2005-01668-CCA-R10-CD, 2006 WL 176550, at *2-4 (Tenn. Crim. App., Knoxville, Jan. 23, 2006).

For purposes of our review, this Court is "bound by the factual findings made by the trial court unless the evidence preponderates against them." Bell, 69 S.W.3d at 177. "However, if the evidence of record is undisputed and calls for no finding of fact to resolve the issue, a trial court's determinations constitute conclusions of law to which an appellate court is not bound." State v. Carr, 861 S.W.2d 850, 856 (Tenn. Crim. App. 1993) (citations omitted). Therefore, when the facts are undisputed, the underlying issue that this Court must determine on appeal remains whether, as a matter of law, the district attorney general abused his or her discretion in denying pretrial diversion. Id.; State v. Brooks, 943 S.W.2d 411, 413 (Tenn. Crim. App. 1997); State v. Theresa Hallsford, No. M2002-00959-CCA-R3-CD, 2002 WL 31852858, at *2 (Tenn. Crim. App., Nashville, Dec. 20, 2002).

In the order granting the petition for writ of certiorari and ordering the district attorney to grant the Defendant's request for pretrial diversion, the trial court acknowledged that the district attorney considered all relevant factors but "respectfully disagree[d]" with the district attorney as to the weight assigned the factors. However, in determining whether a defendant is entitled to pretrial diversion, the trial judge "may not re-weigh the evidence or substitute its view for that of the district attorney general." Bell, 69 S.W.3d at 179. "It is critical to emphasize that the discretion to grant or deny pretrial diversion rests with the district attorney general, not the trial court." Id.

The assistant district attorney general noted in his July 15, 2005 response that the Defendant was sixty-seven years old, had been married for forty-six years, and had provided "well for his family." The district attorney also acknowledged that the Defendant had no prior criminal history and that he possessed a positive occupational and social history. The district attorney then described the circumstances of the offense,[4] stating that this is "not a case where someone 'slipped up'" one

_____

[4] In its order remanding the case to the district attorney for reconsideration, the trial court cites to State v. Brian M. Minoux, No. 01C01-9509-CR-00309, 1997 WL 137421 (Tenn. Crim. App., Nashville, Mar. 27, 1997), noting that "a business owner was granted pre-trial diversion of twenty counts of violation of Tenn. Code Ann. § 67-1-1440(d)." However, the opinion in Minoux does not describe in detail the circumstances surrounding the offenses or the defendant's
(continued...)

-11-

day but that the case involved the continuous filing of false returns over a thirty-seven-month period. The district attorney opined that "the probability that the fraudulent activity preceded the audit period is great." The district attorney also referred to the Defendant's untruthfulness with investigators and to the Defendant's "long term, sustained, intentional violation of the law . . . ." Finally, the district attorney cited the need for deterrence because the tax system is based largely on self-reporting and noted that the Defendant's crime involved theft from the citizens of this State.

In his October 13, 2005 letter, the district attorney complied with the order of the trial court and considered the Defendant's "amenability to correction, full restitution, [and] withdrawal from preparation of sales tax returns for and management of the business." The district attorney observed that the Defendant did not offer to pay restitution until after he was indicted and that, if the Defendant was truly remorseful, he would pay restitution for years prior to the audit period. The district attorney pointed out that "the amount involved here was sales tax actually collected by the defendant from customers but stolen by the defendant prior to returns being filed with the state." In addressing the Defendant's amenability to correction, the district attorney noted the Defendant's untruthfulness with investigators and characterized the Defendant's reaction to the investigation as "continual 'stonewalling.'" The district attorney referred to the final report of the Department of Revenue, stating that the report showed "how for years the defendant stole the tax money which he had collected and how he attempted to continue to fool the investigators once he was caught." Finally, the district attorney inferred that the Defendant failed to supply evidence in support of his claim that he had transferred management of the business to his son. The district attorney then concluded that "the weight of the decision is heavily for the denial of pretrial diversion . . . ."

The Tennessee Supreme Court stated in Curry that "the circumstances of the offense and the need for deterrence may alone justify a denial of diversion, but only if all of the relevant factors have been considered as well." 988 S.W.2d at 158. Here, the district attorney also stated that the Defendant was not amenable to correction, citing his untruthfulness with investigators and his behavior during the investigation. The Department of Revenue's report, particularly the section which discusses the facts related to the Defendant's intent, support the district attorney's conclusions about the Defendant's actions. Moreover, as noted by the trial court, the Defendant failed to provide any evidence in support of his claim that his acts were unintentional.

In this case, there were no factual disputes to be resolved by the trial court. The issue is primarily whether, as a matter of law, the prosecutor abused his discretion by denying the Defendant pretrial diversion. See Carr, 861 S.W.2d at 856. In a close case where the prosecutor could have legitimately granted or denied the application, the trial court must defer to the judgment of the

---

[4](...continued)
behavior during the investigation. Moreover, the district attorney agreed to pretrial diversion in that case, and the opinion did not address the defendant's suitability for the program.

prosecutor.[5] <u>Hallsford</u>, 2002 WL 31852858, at *2 (citing <u>Carr</u>, 861 S.W.2d at 856). Here, the trial court found that the prosecutor had considered all relevant factors. However, the trial court disagreed with the prosecutor's conclusion that the factors considered against diversion outweighed the factors considered in favor of diversion. In our view, the trial court impermissibly substituted its judgment for the judgment of the prosecutor.

We conclude that the district attorney did not abuse his discretion by denying the Defendant's application for pretrial diversion. While he considered relevant factors in favor of diversion, such as the Defendant's lack of a prior criminal history and his good family and social history, he concluded that they were outweighed by the length of time and manner in which the Defendant defrauded the State, the need for deterrence in tax reporting, and the Defendant's poor amenability to correction. Such a decision was within his discretion. <u>See, e.g.</u>, <u>id.</u>; <u>State v. Karen Kay Shrewsbury</u>, No. 01C01-9308-CC-00264, 1994 WL 390453 (Tenn. Crim. App., Nashville, July 28, 1994).

## CONCLUSION

The judgment of the trial court ordering the assistant district attorney general to grant the Defendant pretrial diversion is reversed. This case is remanded to the trial court for further proceedings.

_____
DAVID H. WELLES, JUDGE

---

[5]Obviously, if the trial judge disagrees with the district attorney's decision to deny pretrial diversion, the trial judge could grant judicial diversion under Tennessee Code Annotated section 40-35-313 after a guilty plea or a finding of guilt. Judicial diversion, if successful, has a similar effect as pretrial diversion, resulting in a dismissal of the charges. <u>See</u> Tenn. Code Ann. § 40-35-313.