STATE of Tennessee, Appellee,

v.

Jeremy A. WINSETT, Appellant.

Court of Criminal Appeals of Tennessee, at Jackson.

Dec. 22, 1993.

Permission to Appeal Denied by Supreme Court June 13, 1994.

Charles D. Wright, Memphis, for appellant.

Charles W. Burson, Atty. Gen. and Rebecca L. Gundt, Asst. Atty. Gen., Nashville, John W. Pierotti, Dist. Atty. Gen. and James J. Challen, III, Asst. Dist. Atty. Gen., Memphis, for appellee.

## OPINION

BIRCH, Judge.

We granted an application filed by Jeremy A. Winsett, the petitioner, pursuant to Rule 10, Tenn.R.App.P., in order to review a judgment entered by Division VI, Criminal Court of Shelby County, upholding the district attorney general's refusal to accept Winsett's

application for participation in the pretrial diversion program.

Because we find that the proceedings in this case were not conducted in the manner required by statute [1] and pertinent law, we reverse the judgment and remand the cause for further proceedings as herein outlined.

## I

The circumstances of the offense do not control our disposition of the case; nevertheless, a brief summary is useful. The record establishes that Winsett lost control of a car he was driving. He collided with another car, killing its driver. A passenger in Winsett's car was also killed, and a second passenger was critically injured. Winsett was charged with two counts of vehicular homicide [2] and subsequently indicted. These are the two charges on which he sought pretrial diversion.

The petitioner, through counsel, formally applied for pretrial diversion by letter addressed to the district attorney general dated February 24, 1993. The letter reads in pertinent part as follows:

This is to confirm my telephone conversation, with Hank Williams of February 23, 1993.

Hank and I have had several conversations regarding this case and I have expressed my concern with an indictment for vehicular homicide where there was absolutely no intoxicants involved.

I understand from Hank that it is and will be your policy not to reduce, or plea bargain, this type indictment.

Please accept this as my formal request that my client be placed in a Pre-trial Diversion program pursuant to Chapter 15 of the T.C.A.

My client was eighteen (18) years of age when this accident occurred, has no prior criminal record, not even a speeding ticket, and is presently a senior at Frayser High School. He is an outstanding young man.

This case is set for report on February 26, 1993, in Division VI. Therefore I would appreciate your response to my request for diversion as soon as possible.

The district attorney general did not respond formally to this letter. On February 26, 1993, however, Winsett's counsel was informed by James J. Challen, III, an assistant district attorney general, that the application had been denied. On March 4, 1993, Winsett petitioned the trial court for the writ of certiorari to review the denial of his application.

The hearing on the certiorari petition was conducted on April 19, 1993. The state offered the testimony of District Attorney General John W. Pierotti. Pierotti furnished some rather general reasons for having turned down Winsett. He testified, for example:

Q. General Pierotti, if you could, state to his Honor what you based and what Mr. Williams and myself, based our opinion on in regard to denying him pretrial diversion.

A. There are a number of factors involved. In this particular situation it is a vehicular homicide wherein two people were killed and one was critically injured. The loss to the family of the deceased is irreparable. There's really nothing that could be done for them.

I don't recommend diversion in cases which involve crimes of violence or where an individual demonstrates a total reckless disregard for the life and the safety of other people.

In this community, since we are such a large community and such a mobile community, I think it is necessary that in situations where people have to drive to work—have to use vehicles in their work, that they have the right to expect that other motorists will conduct themselves in such a way that will not endanger them or passengers in their automobiles.

This particular situation, when I looked at the facts of the case, I saw that this defendant on a rainy day was apparently operating his automobile at a high speed, cutting in and out of traffic, finally losing

1. T.C.A. § 40–15–105 (1990).

2. T.C.A. § 39–13–213.

control of it, hitting another car. The driver of the other car was killed instantly. A young woman in his car was killed and another young woman was critically injured.

I'm not mindful that he is youthful and does not have any prior record, however, I just think the balancing of the situation, the community's interest in this matter far outweighs the interest of putting this young man on diversion. If, in situations like this, if we were forced to put people on diversion, I think that it would give an extremely bad example to other people who would conduct themselves as this young man did.

Q. General, you mentioned also that as far as making the family members whole, that it would be impossible to do this as far as the family members of these two deceased individuals. Did I also indicate to you that I talked with the family of these two individuals?

A. I believe you did indicate that you had talked with them and that they were not receptive to a diversion program....

Winsett adduced the testimony of four witnesses, three of whom described him as an extraordinarily gifted young man. The other witness, Shirley Williams, prepared and submitted to the court the Department of Correction Investigation Report. The report was dated March 5, 1993—obviously too late to have been considered in the February 26, 1993, decision to deny Winsett's application. Additionally, one letter of support from a family friend and several from the staff of the school Winsett attends were made exhibits to the record.

On May 7, 1993, the trial court sustained the district attorney general's refusal to allow Winsett to participate in the pretrial diversion program.

■ On appeal, the petitioner urges that he is a suitable candidate for pretrial diversion and that the trial court's ruling upholding the district attorney general's decision constitutes reversible error. Thus, the question before us is whether the finding of the trial court that the district attorney general did not abuse his discretion in denying Win-

sett's application for pretrial diversion is supported by a preponderance of the evidence. *State v. Watkins*, 607 S.W.2d 486 (Tenn. Crim.App.1980), *p.t.a. denied*, Nov. 3, 1980.

■ We have thoroughly examined this record and conclude that we are unable to reach the merits of this controversy for the reasons outlined below.

Certiorari is a procedural vehicle which has enjoyed an extremely long life. It functions properly when a court uses it to review a proceeding to determine whether there were any irregularities. *Black's Law Dictionary*, 228 (6th ed. 1990).

In the course of presenting at the hearing new and additional evidence that was not considered by the district attorney general before making his decision, the hearing was stripped of its character as a certiorari review hearing. Instead, it took on the aspects of a *de novo* hearing and was thereby vaulted to a level far beyond its statutorily prescribed scope.

As a consequence, the trial court's judgment was based upon new and different evidence. It is the judgment that resulted from a consideration of this new and different evidence that we will not consider.

## II

In 1975, the General Assembly enacted the pretrial diversion program. The driving force behind this legislation was the recognition that Tennessee needed a uniform statewide system to identify and divert certain offenders from the usual prosecutorial process. Society, it was thought, would be better served if certain persons were diverted rather than imprisoned.

Little difficulty is encountered when diversion is granted. When, as here, the prosecutor denies pretrial diversion, the procedure surrounding the statutory certiorari review of that decision is far from uniform and often misapprehended. Our decision to remand this cause has created an opportunity for us to attempt to infuse a measure of clarity into the certiorari review procedure.

■ Because the applicant bears the burden initially to demonstrate to the prose-

cutor both eligibility for and entitlement to pretrial diversion, the applicant would certainly want to provide the prosecutor with as complete an application as circumstances warrant. Obviously includable would be evidence bearing on the *Hammersley*[3] factors: circumstances of the offense, social history, mental and physical condition, record of criminal behavior, and the likelihood that pretrial diversion will serve the ends of justice and the best interests of the public and the defendant. Additionally, an applicant may want to include affidavits, character letters, and other material for the prosecutor's consideration. Besides these, the material may be supplemented by a pretrial investigation report. *See* T.C.A. § 40–15–104.

 The prosecutor must consider all the evidence which tends to show that the applicant is amenable to correction and is not likely to commit additional crimes. *State v. Markham*, 755 S.W.2d 850, 853 (Tenn.Crim. App.1988). After considering the information, the prosecutor must respond and inform the applicant or counsel of his decision. If the decision is to deny pretrial diversion, a recognition of the limited nature of certiorari review mandates that this response be formal and written. It should include:

1. An enumeration of all the evidence considered;

2. The reason for denial: that is, an enumeration of the factors considered and how some factor(s) controlled the decision and some explanation of why certain factors outweighed others;[4] and

3. An identification of any disputed issue of fact.

■ The unsuccessful applicant who desires review of the prosecutor's. decision should file a petition for the writ of certiorari as provided in T.C.A. § 40–15–105(b)(3). The record as thus far compiled should be attached to the petition. This record, of course, would contain the complete application and the prosecutor's response.

■ Upon receipt of the petition and the record as herein suggested, the trial court may decide the cause on the record or may schedule an evidentiary hearing if necessary.

It is extremely important to note that the only evidence the trial court may consider at the certiorari hearing is that evidence considered by the prosecutor in the decision denying pretrial diversion. *State v. Brown*, 700 S.W.2d 568 (Tenn.Crim.App.1985). In view of this evidentiary restriction, an evidentiary hearing would seem unneeded in the usual case. However, a hearing may be useful to clarify matters already in the record about which there may be some dispute.

Accordingly, we reverse and remand this cause. Winsett may file a new application for pretrial diversion. If filed, the cause will proceed according to the procedures herein described. If no application is filed within thirty days of the release of this opinion, the cause shall proceed to trial or other disposition unless stayed by higher authority.

PEAY and SUMMERS, JJ., concur.

---

3. *State v. Hammersley*, 650 S.W.2d 352, 355 (Tenn.1983).

4. *State v. Herron*, 767 S.W.2d 151 (Tenn.1989); *State v. Markham*, 755 S.W.2d at 853; *State v. Carr*, 861 S.W.2d 850, 855–56 at 9 (Tenn.Crim. App.1993).