## IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE

FILED

FOR PUBLICATION
**June 28, 1999**
Filed: June 28, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

DWAYNE HAWKINS and )
AL GOSSETT, )
          )
      PLAINTIFFS/APPELLEES, )   Davidson Circuit No. 96-C-2528
          )
v. )   Hon. Barbara N. Haynes, Judge
          )
SUPERIOR MOTORS, INC. and )   No. 01S01-9811-CV-00199
PATRICK A. HART, )
          )
      DEFENDANTS/APPELLANTS, )
          )
          )
NELSON BOWERS II and BOWERS )
TRANSPORTATION GROUP, LLC, )
          )
      DEFENDANTS. )

FOR DEFENDANTS/APPELLANTS:    FOR PLAINTIFFS/APPELLEES:

JOHN BRANHAM                 STEVEN A. RILEY
KATHRYN BARNETT          KATHARINE R. CLOUD
Nashville                      Nashville

# O P I N I O N

COURT OF APPEALS AFFIRMED IN PART AND
REVERSED IN PART; CASE REMANDED TO
TRIAL COURT                                     HOLDER, J.

**OPINION**

We granted this appeal to address: (1) whether the Court of Appeals erred in effectively granting summary judgment to the plaintiffs on the issue of individual liability; and (2) whether a party is required to produce privilege logs for documents or materials withheld pursuant to a claim of privilege or work product protection. We hold that there exist genuine issues of material fact on the issue of individual liability and that any creation of a requirement for privilege logs similar to that found in the Federal Rules of Civil Procedure should be in the form of an amendment to the Tennessee Rules of Civil Procedure. The decision of the Court of Appeals on both these issues is reversed.

**FACTS**

The following facts appear not to be in dispute. Patrick Hart met Mark Chmelar at a yacht show in Miami. Chmelar owned Superior Motors, Inc., an automobile dealership located in Nashville, Tennessee. Chmelar suggested that Hart acquire an interest in the Nashville dealership. Hart subsequently invested $500,000.00 and acquired a fifty percent interest in Superior Motors, Inc. The parties agreed that Chmelar would manage the day-to-day operations of the dealership. In addition, Hart and his wife personally guaranteed a $4,000,000 capitalization loan and a $6,000,000 floor plan loan and provided First Tennessee with a $1,000,000 letter of credit.

Less than a year and one-half after entering the business arrangement with Chmelar, Hart was notified by First Tennessee Bank that Superior Motors was $1,000,000 out of trust on its floor plan. Chmelar assured Hart that there were no problems. Approximately three months later, however, Hart was

informed that Superior Motors was now $1,600,000 out of trust. Once again, Chmelar assured Hart that everything was all right.

During the next several months, Hart learned that: (1) Chmelar had used Superior Motors' credit to purchase an airplane; (2) Chmelar had used Superior Motors' assets to purchase a yacht; (3) Chmelar was paying himself a salary of $351,357 rather than the agreed-upon salary of $144,000; and (4) Superior Motors had sustained an operating loss of $714,000. First Tennessee contacted Hart and informed him that the bank intended to call his letter of credit and was going to require him to honor his personal guaranty unless Superior Motors' financial problems were quickly resolved. Hart, now facing serious potential personal liability, retained an attorney to investigate the problems at Superior Motors.

Al Gossett and Dwayne Hawkins had been partners in the automotive business since the late 1980s. Gossett contacted Hart in Seattle and informed him that he and Hawkins were interested in acquiring the Nashville dealership. Hart met with Gossett and Hawkins in Memphis. Gossett and Hawkins agreed to make an offer for Superior Motors, Inc. The following day, the parties executed two documents, an "Agreement for the Purchase and Sale of Assets" and an "Agreement for Interim Management Agreement."

Hart and Gossett met later in the day with Hart's lawyer. Hart informed his lawyer that "I got this thing solved. Here are the two agreements. They're all signed, put to bed, and I can go home." Later, Hart was apparently advised by his attorney that the contracts were not financially advantageous to him and that he could probably have made more money from the sale.

The next day, Hart's attorney sought Gossett's assistance in convincing Chmelar to relinquish his stock in the Nashville dealership. Since Hart and Chmelar each owned fifty percent of Superior Motors, Hart could not out-vote Chmelar. Following a meeting between Gossett and Chmelar, Chmelar relinquished his stock and was subsequently terminated as president.[1] Gossett's testimony indicates that he learned of Hart's intention not to perform under the agreement the day after Chmelar was terminated as president. Hart later contracted to sell the Nashville dealership for more money to Nelson Bowers.

Gossett and Hawkins filed suit against Hart and Superior Motors, Inc., seeking to enforce the contract for the sale of Superior Motors, Inc. Bowers was provided notice of this action. Bowers later purchased Superior Motors and assigned his interest to European Motors, Inc. Gossett and Hawkins amended their complaint to include Bowers and Bowers Transportation Group as defendants.

Superior Motors, Inc. and Patrick A. Hart moved for summary judgment. They alleged that the "Agreement for the Purchase and Sale of Assets" was too uncertain to be enforced. Hart also argued that he could not be held personally liable on the contract. Bowers and Bowers Transportation Group also moved for summary judgment on the constructive trust claim. The trial court found that the agreement for sale was too indefinite to be enforced and that impressing a constructive trust on the assets of Superior Motors was not an appropriate equitable remedy. The trial court granted summary judgment to Superior Motors and Hart. The Court of Appeals held that portions of the agreement were

---

[1]Gossett was instructed by Hart to terminate Chmelar. Gossett was apparently acting manager of Superior Motors at that time pursuant to the Interim Management Agreement.

enforceable, that Hart could be held individually liable,[2] and that Hart should provide an index containing a description of the materials being withheld pursuant to an assertion of privilege or work product protection. We granted review only on the issues of individual liability and privilege logs.

## INDIVIDUAL LIABILITY

The Court of Appeals held that the agreement between the parties "imposes individual liability upon Hart as guarantor to the extent of the liability of Superior Motors, Inc." The court, however did not explain its reasoning behind this holding.

A party seeking summary judgment must demonstrate the absence of any genuine and material factual issues. Byrd v. Hall, 847 S.W.2d 208, 214 (Tenn. 1993). Mere "conclusory assertion[s] that the non-moving party has no evidence [are] clearly insufficient." Id. at 215. The movant must either affirmatively negate an essential element of the non-movant's claim or conclusively establish an affirmative defense. Id. 215 n.5. If the movant does not negate a claimed basis for the suit, the non-movant's burden to produce either supporting affidavits or discovery materials is not triggered and the motion for summary judgment fails. Id. Summary judgment shall be denied if there is "any doubt whether or not a genuine issue exists." Id. at 211.

Hart signed the agreement both as "Pat Hart" and as "Guarantor." Hart alleges that his personal liability as a guarantor extended only to the provision that provided personal liability for Superior Motors' failure to pay specified

---

[2]Hart alleged in his motion for summary judgment that he was not individually liable. This issue was pretermitted by the trial court. The Court of Appeals simply held, "The agreement imposes individual liability upon Hart as guarantor to the extent of the liability of Superior Motors, Inc."

5

employee benefits and taxes. The plaintiffs counter by citing several contractual provisions that provide that "the parties shall take all necessary actions to effectuate . . ." and the parties agree to "bring about and consummate" the deal. Both parties cite to various excerpts in depositions supporting their relative positions. Gossett apparently began acting as interim manager pursuant to the parties' agreements when he terminated Chmelar. We hold that, on the basis of the record before us, there exist genuine and material issues of fact as to whether Hart may be held individually liable in this case to the extent of Superior Motors, Inc.'s liability.

## PRIVILEGE LOGS

The plaintiffs subpoenaed files from Hart's prior and current lawyers that relate to Superior Motors.[3] From the 25,000 pages of documents requested, the defendants estimated that they produced all but the contents of two and one-half bankers' boxes of documents. The defendants argue that these files are protected from discovery based upon the attorney-client privilege and the work product doctrine.

The trial court, in two separate orders, declined to require the defendants to provide a description of the withheld documents. The Court of Appeals held that upon remand "the trial court should require Hart to provide an index containing a description of the materials being withheld in order to enable the court to determine whether the claim of privilege is being properly asserted." The defendants allege that the Court of Appeals' decision imposes an obligation to provide privilege logs in Tennessee. The defendants argue that the Court of

---

[3]The subpoena to the law firm of Harwell, Howard, Hyne, Gabbert & Manner, for example, lists thirteen categories of documents requested. Among those documents are "[a]ll documents related to Patrick Hart," "[a]ll documents related to Superior Motors, Inc.," and "documents in the personal files of [listed attorneys] that are responsive to requests 1-12 above."

Appeals erred in relying on the Federal Rules of Civil Procedure in establishing a privilege log requirement because the Tennessee Rules of Civil Procedure do not provide for such.  We agree.

The Federal Rules of Civil Procedure provide that a party must provide notice to other parties if it is withholding materials due to an assertion of privilege or work product protection.  See generally Fed R. Civ. P. 26.  The federal rule further mandates that a party asserting privilege or work product must provide sufficient information to enable other parties to evaluate the applicability of the claimed privilege or protection.  Specifically, the federal rule provides:

> When a party withholds information otherwise discoverable under the rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege protection.

Fed. R. Civ. P. 26(b)(5).  The rule is designed to reduce the need for in camera examination of documents.

The Tennessee Rules of Civil Procedure do not have a discovery provision requiring privilege logs similar to that contained in Fed. R. Civ. P. 26(b)(5).  Under our current rules of discovery, documents or material withheld pursuant to a claim of privilege or work product protection may be submitted to the trial judge for in camera inspection.  See generally Tenn. R. Civ. P. 26.03; Munke v. Munke, 882 S.W.2d 803, 806 (Tenn. App. 1994).  We hold that adoption of a policy similar to that contained in Fed. R. Civ. P. 26(b)(5) should

come in the form of an amendment to the Tennessee Rules of Civil Procedure and be promulgated through the normal process for such amendments.[4]

## CONCLUSION

The judgment of the Court of Appeals granting the plaintiffs summary judgment on the issue of Hart's individual liability and creating the requirement for privilege logs is reversed.  We hold that there exist genuine issues of material fact on the issue of individual liability and that creation of a requirement for privilege logs similar to that found in the Federal Rules of Civil Procedure should be in the form of an amendment to the Tennessee Rules of Civil Procedure.  The case is remanded to the trial court for further proceedings consistent with this opinion.  The cost of this appeal shall be taxed against the plaintiffs for which execution shall issue if necessary.

_____

JANICE M. HOLDER, JUSTICE

**Concurring:**

Anderson, C.J.
Drowota, Birch, and Barker, J.J.

---

[4]Amendments to the Tennessee Rules of Civil Procedure are made via the Advisory Commission on Rules of Civil and Appellate Procedure, with input from interested members of the bar and the public.