IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

JULY 1996 SESSION

FILED

March 24, 2008

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | C.C.A. NO. 02C01-9601-CC-00005 |
| Appellant, | ) | |
| | ) | CARROLL COUNTY |
| VS. | ) | |
| | ) | HON. C. CREED MCGINLEY, |
| CAROLYN L. CURRY, | ) | JUDGE |
| | ) | |
| Appellee. | ) | (Rule 9 Appeal - Pretrial Diversion) |

FOR THE APPELLANT:          FOR THE APPELLEE:


CHARLES W. BURSON          DONALD E. PARISH
Attorney General & Reporter     Ivey, Parish & Johns
                                124 East Paris St.
TIMOTHY F. BEHAN            P.O. Box 229
Asst. Attorney General         Huntingdon, TN  38344
450 James Robertson Pkwy.
Nashville, TN  37243-0493


ROBERT RADFORD
District Attorney General


ELEANOR CAHILL
Asst. District Attorney General
P.O. Box 686
Huntingdon, TN  38344




OPINION FILED:_____



REVERSED AND REMANDED


JOHN H. PEAY,
Judge

# **O P I N I O N**

The defendant was charged in the indictment with theft of property valued between ten thousand dollars ($10,000) and sixty thousand dollars ($60,000). On September 21, 1995, she filed an application for pretrial diversion. The district attorney general denied the application on September 28, 1995. The defendant then filed a petition for a writ of certiorari, seeking review of the district attorney general's decision to deny her application. After a hearing, the trial court found that the State had abused its discretion and ordered the defendant placed on pretrial diversion. In this appeal pursuant to T.R.A.P. 9, the State contends the trial court erred in finding that the State had abused its discretion in denying pretrial diversion. We reverse the judgment of the trial court and remand this matter for further proceedings consistent with this opinion.

This case arose from the discovery that the defendant had allegedly misappropriated approximately twenty-seven thousand three hundred sixty-eight dollars and seventy-three cents ($27,368.73) from the city of McKenzie. The defendant worked as an assistant clerk for the city of McKenzie from 1984 through 1995. As an assistant clerk, she received incoming mail which consisted primarily of payments for taxes and fees, wrote receipts for those payments, and made the corresponding deposits. Her alleged scheme of embezzlement involved the cashing of personal checks through the city collection drawer. Because of her duties as an assistant clerk, she was then able to prevent the deposit of her personal check to the city account. She concealed her misappropriations by replacing the missing city funds with unreceipted and unrecorded checks which she received through the mail as an assistant clerk. This embezzlement of city funds occurred over a two year period from July of 1993 through July of 1995. Upon discovery of the misappropriations, the defendant cooperated with the investigating authorities, giving written and verbal statements indicating her involvement in the scheme.

2

Shortly after her indictment, the defendant submitted a detailed application for pretrial diversion to the district attorney general's office. The application revealed that the defendant was a divorced, thirty-four-year-old mother of three children, ages nineteen, thirteen and eight. She was the custodial parent but received only about half the amount of the court-ordered child support. In addition, the defendant had raised her niece, who was eighteen at the time of the application. The defendant's oldest child and her niece had graduated from high school and were attending college. The defendant herself had attended college, graduating with a Bachelor of Science degree with honors in 1983. She has many family members living in McKenzie and throughout Tennessee.

The defendant began working as an assistant clerk for the city of McKenzie shortly after graduating from college. She held that position until she resigned following the discovery of her misappropriations. She also served in the Tennessee National Guard from 1983 to 1990, receiving an honorable discharge. After resigning from her employment with the city in July of 1995, she began working at Tennessee Metal Corporation, where she made five dollars and sixty-five cents ($5.65) an hour. With child support payments and her family's assistance, the defendant was barely able to meet her monthly obligations. She had no savings or investments of any kind and, in fact, filed for bankruptcy in July of 1995. She stated that she had used the misappropriated funds for routine living expenses for her family.

She was a very active member of her church and was involved in many local charities and community projects. Included with her diversion application were fifteen letters of support from various members of her community. The letters were written by ministers, members of local charities, members of community organizations, and friends who had known her for years. She offered to make monthly restitution payments to the city. In addition, she agreed to provide the approximately one thousand eight hundred dollars ($1,800) in her city pension account as an initial lump sum payment

3

toward her restitution amount. The defendant stated in her application that she had no prior arrests or convictions of any kind. She also stated that she regretted her actions and the shame they brought to bear on herself and her family.

In a letter dated September 28, 1995, the State denied the diversion application. The letter recounted the facts surrounding the alleged embezzlement and gave the following reason for denying diversion:

> We have considered the defendant's past history and her conduct for two years in defrauding the City of McKenzie. This was a calculated criminal scheme that took planning and thought. It manifests a criminal intent for a long period of time and not something that happened at [sic] once.
>
> We cannot believe that it would be in the best interests of the public, the defendant and justice to overlook a criminal scheme of this proportion and grant pre-trial diversion to the defendant.

The trial court conducted a hearing on the defendant's petition for a writ of certiorari on October 11, 1995. The defendant argued that her application revealed she was an excellent candidate for diversion and that the State's letter of denial indicated that the district attorney general had not considered all of the relevant factors in making the decision to deny diversion. The State, on the other hand, argued that it had considered the defendant's respectable "past history," but that it was outweighed by the circumstances of the offense indicating a sustained criminal scheme of some magnitude. The State argued further that its mention of "the best interests of the public, the defendant and justice" implied that deterrence was a factor in the denial of diversion. After hearing argument from both parties, the trial court found that the State's "best interests" language in the letter of denial did not intimate that deterrence was a factor in the State's decision. As a result, the only reason for the denial of diversion was the nature and circumstances of the offense, specifically the sustained criminal scheme over a period of two years coupled with the large amount of money embezzled and the

4

defendant's efforts to conceal her misappropriations. Furthermore, the trial court questioned whether all of the relevant factors had been considered by the State in making the decision to deny diversion. Thus, the trial court concluded that the district attorney general had abused his discretion in denying the defendant's application for pretrial diversion.

Pretrial diversion is a relatively new option in Tennessee, having been enacted by the General Assembly in 1975. The statutory provisions outlining Tennessee's pretrial diversion program are somewhat ambiguous and, not surprisingly, have resulted in varying judicial decisions in the years since the inception of the program. Because of the persistence of confusion surrounding pretrial diversion, we believe it would be wise to review the principal aspects of the law concerning pretrial diversion, particularly judicial review of the action of the district attorney general.

The defendant bears the initial burden to demonstrate to the district attorney general both eligibility for and entitlement to pretrial diversion. See State v. Herron, 767 S.W.2d 151, 156 (Tenn. 1989); State v. Winsett, 882 S.W.2d 806, 809-810 (Tenn. Crim. App. 1993). Mere statutory eligibility under T.C.A. § 40-15-105(a) does not, standing alone, entitle a defendant to pretrial diversion. Instead, statutory eligibility sets the stage for the district attorney general to review the information provided by the defendant on the diversion application or gathered through a pretrial investigation pursuant to T.C.A. § 40-15-104, and to determine if the defendant is entitled to pretrial diversion. Accordingly, it would be prudent for a defendant to submit a detailed application with particular emphasis on the factors relevant to the pretrial diversion decision.[1] Moreover, the defendant may also wish to supplement the diversion application with character letters or affidavits. We cannot overemphasize the importance

---

[1] The factors relevant to the pretrial diversion decision were laid out in State v. Hammersley, 650 S.W.2d 352 (Tenn. 1983), and in State v. Washington, 866 S.W.2d 950 (Tenn. 1993). They are also set forth later in this opinion.

to the defendant of a thorough application. If the defendant submits a superficial application, he or she risks a conclusory denial by the district attorney general and even the possibility that such a conclusory denial will be upheld upon judicial review.[2] See, e.g., State v. Baxter, 868 S.W.2d 679, 681-682 (Tenn. Crim. App. 1993).

Once a defendant has submitted an appropriate application for diversion, it is the duty of the district attorney general to consider the relevant factors carefully in making a decision. The factors required to be considered by the district attorney general in deciding whether or not to grant pretrial diversion were set forth in State v. Hammersley, 650 S.W.2d 352 (Tenn. 1983), and again in State v. Washington, 866 S.W.2d 950 (Tenn. 1993). These factors for consideration, in addition to the circumstances of the offense, include the defendant's criminal record, social history, present physical and mental condition where appropriate, amenability to correction, behavior since arrest, home environment, current drug usage, emotional stability, past employment, general reputation, marital stability, family responsibility and attitude. In addition, the district attorney general should consider the deterrent effect of punishment and the likelihood that pretrial diversion will serve the ends of justice and the best interests of both the public and the defendant. See Washington, 866 S.W.2d at 951; Hammersley, 650 S.W.2d at 355. "The prosecutor must consider all the evidence which tends to show that the applicant is amenable to correction and is not likely to commit additional crimes." Winsett, 882 S.W.2d at 810 (emphasis added).

When the district attorney general has decided to grant pretrial diversion, little controversy has arisen. Of course, the trial court must approve the memorandum of understanding. See T.C.A. § 40-15-105(b)(1). Yet it is clear that discretion rests with the district attorney general, and the trial court's approval is mandatory unless diversion

_____

[2] We do not encourage conclusory denials of even superficial applications for pretrial diversion. Rather, in such a case, we urge prosecutors to base their decisions on all of the relevant information available to them, while specifically mentioning the deficient areas of the diversion application.

of the case is unlawful, the memorandum of understanding was obtained by fraud, or the district attorney general acted arbitrarily and capriciously. See T.C.A. § 40-15-105(b)(2).

When, on the other hand, the district attorney general decides to deny pretrial diversion, the decision is subject to somewhat greater scrutiny. If the district attorney general denies diversion, he or she must inform the defendant through a formal, written response to the application. See Winsett, 882 S.W.2d at 810. This response should include

> 1. An enumeration of all evidence considered;
>
> 2. The reason for denial: that is, an enumeration of the factors considered and how some factor(s) controlled the decision and some explanation of why certain factors outweighed others; and
>
> 3. An identification of any disputed issue of fact.

Id. (footnote omitted). That is, the response must be more than an abstract statement that the prosecutor has considered the relevant factors. "He must articulate why he believes a defendant in a particular case does not meet the test. If the [district] attorney general bases his decision on less than the full complement of factors . . . he must, for the record, state why he considers that those he relies on outweigh the others submitted for his consideration." Herron, 767 S.W.2d at 156.

The defendant may seek review of the district attorney general's decision to deny diversion through a petition for writ of certiorari. See T.C.A. § 40-15-105(b)(3). The petition should include the record containing the application and the prosecutor's response. Upon its receipt of the petition and record, the trial court may decide the cause on the record or, if necessary, may schedule an evidentiary hearing. Winsett, 882 S.W.2d at 810. Upon a petition for a writ of certiorari, the duty of the trial judge is to review the action of the district attorney general and to dismiss the petition unless it finds

that the district attorney general has abused his or her discretion. See T.C.A.
§ 40-15-105(b)(3). The trial judge must confine his or her review to the evidence which
was considered by the district attorney general at the time of consideration of the
application. See Winsett, 882 S.W.2d at 810.

Thus, in order for the trial court to determine whether the district attorney
general abused his or her discretion, it must be able to determine what evidence was
actually considered, the reason(s) for denying the petition, and any disputed issue(s) of
fact. Where, as here, the response letter prepared by the district attorney general makes
this determination impossible, the trial court should schedule an evidentiary hearing and
allow the district attorney general to testify in order to fill in the gaps left by the letter.
Only in this way can the trial court have assurances that it is considering the same
evidence considered by the prosecutor in his or her decision to deny pretrial diversion.
Only in this way can it determine whether the prosecutor abused his or her discretion in
denying diversion.

In this case, the trial court did not hear testimony from the prosecutor as to
why he denied pretrial diversion to this defendant. The letter denying pretrial diversion
was inadequate in this regard under the requirements of our case law. Indeed, the trial
court specifically found that the language of the letter did not demonstrate that the district
attorney had considered all of the relevant factors. Accordingly, the trial court made a
finding of fact that the district attorney general had not considered the relevant factors
and had based his decision entirely on the circumstances of the offense, thereby abusing
his discretion.

With all due respect, we think the trial court erred in making this finding of
fact because the record before it was insufficient from which to conclude what factors the
district attorney general had considered. If, after hearing testimony from the prosecutor

8

the trial court determines that he denied diversion without considering all of the relevant factors, a finding that the prosecutor thereby abused his discretion would be appropriate. See State v. Markham, 755 S.W.2d 850, 853 (Tenn. Crim. App. 1988). If, on the other hand, it determines that the prosecutor did properly consider and assign due significance to all of the relevant factors, then it must affirm the denial of diversion if the record contains substantial evidence to support the denial. State v. Carr, 861 S.W.2d 850, 856 (Tenn. Crim. App. 1993).

For the reasons set forth above, we reverse the trial court's order granting diversion and remand this matter in order for the trial court to hear testimony from the prosecutor so as to establish a record from which it may make a determination of whether or not the prosecutor abused his discretion in denying pretrial diversion to this defendant.

_____
JOHN H. PEAY, Judge

CONCUR:

_____
DAVID H. WELLES, Judge


_____
CORNELIA A. CLARK, Special Judge

10