# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### June 2, 2009 Session

## STATE OF TENNESSEE  v. TERRY RAINEY

### Direct Appeal from the Circuit Court for Chester County
#### No1. 07-043      Roger Page, Judge

---

### No. W2008-02459-CCA-R3-CO  - Filed June 9, 2010

---

The State appeals the Chester County Circuit Court's decision to order pretrial diversion for the Defendant-Appellee, Terry Rainey.  Rainey was indicted for reckless endangerment, a Class E felony, and two counts of aggravated assault, Class C and D felonies.  The State claims it properly appealed as of right under Rule 3(c) of the Tennessee Rules of Appellate Procedure.  Alternatively, the State asserts the circumstances of this case warrant review as an extraordinary appeal under Rule 10(a) of the Tennessee Rules of Appellate Procedure. Upon review, we hold that the State cannot appeal the trial court's decision to order pretrial diversion under Rule 3(c).  We also decline review under Rule 10(a).  Accordingly, the State's appeal is dismissed.

### Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JERRY L. SMITH and JOHN EVERETT WILLIAMS, JJ., joined.

Mark Donahoe, Jackson, Tennessee, for the Defendant-Appellee, Terry Rainey.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; James G. (Jerry) Woodall, District Attorney General; and Benjamin Mayo, Assistant District Attorney General, for the Appellant, State of Tennessee.

### OPINION

**Background**.  The following testimony was presented at the preliminary hearing in the General Sessions Court of Chester County:  J.W. Rainey ("J.W.") testified that he is the father of the defendant, Terry Rainey ("Rainey").  Rainey was at J.W.'s home on the afternoon of May 19, 2007.  J.W. said an altercation took place while they were in the

backyard eating ice cream with Rainey's mother. Rainey "said something to his mother; and then he throwed [sic] some ice in her face." J.W. testified that he stood up and told Rainey not to treat his mother that way. Rainey responded by saying he was tired of J.W. "bossing him around." Rainey then picked up a brick. J.W. testified that:

> [Rainey] was walking to me to use that brick. And I was holding my hands up like this and trying to protect my face from that brick, and I fell down. . . . I don't know whether he knocked me down or whether I fell down. But he had a – when I fell down, I come – I got back up, I picked up the chair I was sitting in and I was going – I started to whoop him with that chair.

J.W. said he tried to protect himself from being hit by the brick. His hands were bleeding from being hit by the brick, so he went inside to wash off the blood. Before he returned outside, he heard a gunshot. J.W. went outside and saw Rainey holding a revolver. J.W. noticed that his wife had blood on her legs. J.W. said he approached Rainey and was two or three feet away when Rainey fired a second shot into the ground. Rainey placed the gun on the patio and called the police. J.W. testified that Rainey then got into his truck and drove away. Rainey picked up his nine-year-old son who was on the property at a nearby barn.

On cross-examination, J.W. testified that he was almost eighty years old and struggled to remember what occurred during the altercation. He was unsure if it was a brick that cut his hands. J.W. stated, "[T]here's something he had in his hand and cut my hand and there was a brick laying there." J.W. did not remember threatening to get his shotgun; however, he expressed uncertainty about what he said during the altercation. J.W. did not believe Rainey intended to shoot him or his wife. J.W. testified that the harm caused to his wife was accidental.

Rainey's mother, Ruth Rainey ("Ruth"), testified that during the altercation, Rainey picked up a brick. She said Rainey "could have hit [J.W.] with that brick any time, but he never did turn it loose, that I saw." Ruth testified that J.W. pushed the brick back, and she saw blood on his hands. Ruth said J.W. threatened to get his gun before going into the house to wash his hands. When the first gunshot was fired, Ruth was walking towards the barn to check on Rainey's son. She said the gunshot knocked the gravel around her feet. Ruth "bent over to brush [the gravel] away and there was blood." She told Rainey not to call an ambulance because she was not hurt. Ruth was later driven to the hospital by J.W., and she said she suffered a flesh wound.

On cross-examination, Ruth testified that she was seventy-seven years old. During the altercation, she said J.W. struck Rainey with a plastic lawn chair. Ruth did not believe Rainey shot at her intentionally. She also testified that Rainey did not threaten her with the

gun. After Ruth's testimony was completed, the trial court questioned Rainey's son in chambers.

The trial court found that the two charges for aggravated assault were not supported by probable cause. The trial court stated, "Both victims have come forward and have stated unequivocally under oath that neither felt threatened under the circumstances." Additionally, the trial court noted that neither J.W. or Ruth believed Rainey intended for them to be harmed. The trial court did find that the charge of reckless endangerment was supported by probable cause.

Notwithstanding the findings of the General Sessions Court, the Chester County Grand Jury indicted Rainey for reckless endangerment and two counts of aggravated assault. Rainey filed a motion for pretrial investigation that expressed Rainey's desire to enter into a pretrial memorandum of understanding with the district attorney general. By letter, the district attorney general denied Rainey's request for pretrial diversion. The letter stated:

> I have received your Application for Pretrial Diversion in the matter of State v. Terry Rainey. I have reviewed the case file and material supplied by your office which consists of several letters and Terry Rainey's employment records[.] I also reviewed records received from your office regarding a prior hospitalization and evaluation of Terry Rainey due to mental problems. In considering your application for pretrial diversion I considered Terry's age, academic record, employment record, criminal history, the need for deterrence with a view toward amenability and whether agreeing to pretrial diversion would be in the best interest of society.
>
> I place no value on Terry's age. He is forty-three years of age and of sufficient maturity to appreciate the wrongfulness of his conduct and to conform his conduct to the requirements of law.
>
> I place moderate weight on Terry Rainey's academic record and weigh it in favor of diversion.
>
> I weigh Terry Rainey's employment record in favor of diversion but place minimum weight on this factor because of a prior suspension wherein he failed to properly follow up on a DUI case and received a two day suspension without pay and due to previous mental problems stemming from his employment. I also consider the fact that Terry committed a breach of trust related to his work when he committed this offense.

I weigh the nature and circumstances of the crime against diversion. In this case Terry committed an act of physical violence against two people that could have resulted in serious bodily injury or death to both victims. Terry created a situation wherein his son could have been seriously injured. I have also considered the fact that the victims involved in this case were Terry's mother and father. I cannot imagine a situation that would cause a responsible person to behave in a manner that threatens the life of his own mother and father and also endanger the safety of [his] own son. These facts cause me untold concern about Terry's ability to control his actions under stressful situations. When I consider and weigh these facts together with Terry's prior history of psychological problems I conclude that in future situation[s] he would be likely to react in a similar manner and that his lack of self[-]control and potential mental problems and the fact that he was taking hydrocodone, xanax, and muscle relaxers at the time when the crime occurred which the present reports indicate are not prescribed are indication that he will be a repeat offender. I weigh the facts against diversion.

I weigh the fact that Terry committed a public breach of trust against granting diversion. Terry was a sworn officer of the law when he committed these crimes of violence against his own parents. I weigh this breach of the public trust heavily against diversion.

I weigh Terry's social history in favor of diversion. He apparently has had a considerable influence in his community and the many letters written on his behalf bare this out. I weigh this in favor of diversion.

I weigh the need for deterrence against diversion. These crimes are crimes of violence but they are also crime[s] of domestic violence. Domestic violence is a serious problem in this community and allowing the defendant to enter into pretrial diversion would greatly undermine law enforcement's efforts in combating this type of criminal behavior.

I find that it would greatly undermine the confidence of the community in law enforcement to agree to pretrial diversion with Terry Rainey. Agreeing to diversion would give the impression that Terry Rainey is receiving special or differential treatment because he has friends in the judicial system. This perception would greatly undermine the Community's attitude towards law enforcement. I weigh this [factor] against diversion. Having considered the foregoing factors I conclude that there is substantial basis to believe that Terry Rainey would reoffend under similar circumstances. I also find that the

-4-

detrimental impact to the public trust makes pretrial diversion out of the question. I therefore decline to enter into a pretrial diversion agreement with Terry Rainey.

Rainey challenged the district attorney general's decision by filing a petition for writ of certiorari with the Circuit Court of Chester County. A pretrial diversion hearing was held during which the trial court heard the arguments of counsel. The trial court then granted Rainey's petition. The order stated: "[T]he district attorney general overemphasized the Defendant's status as a trooper for the Tennessee Highway Patrol, thus improperly placing a higher standard on the Defendant when such acts giving rise of the charge occurred while the Defendant was not on duty." The case was remanded to the district attorney general for reconsideration.

On remand, the district attorney general again denied Rainey's request for pretrial diversion. Its second letter was identical to the first except for the following changes: In addressing Rainey's employment history, the second letter removed the line, "I also consider the fact that Terry committed a breach of trust related to his work when he committed this offense." The second letter also removed the statement that Rainey lacked a prescription for medication he was taking at the time of the altercation. In the second letter, the following sentence was added at the end of the fifth paragraph: "These factors considered in light of the fact that Terry Rainey is trained in the law and acted contrary to his training in committing these crimes indicate that he will be a repeat offender." Lastly, the second letter added the following sixth paragraph:

> I weigh the fact that prior efforts to conform Terry Rainey's conduct have failed, against diversion. On October 1st, 2000 Terry Rainey responded to the scene of a crash with injuries and a suspected DUI. Terry Rainey neglected his duties by failing to request proper procedures be followed in obtaining blood alcohol content and by failing to follow proper procedure for insuring the safe release of a person suspected of DUI. As a result of Terry Rainey['s] neglect of duty Larry Crow was improperly released and subsequently involved in a second crash related to his intoxication which resulted in serious injury to two other persons. The Tennessee Highway Patrol in an effort to correct Terry Rainey's inappropriate behavior, suspended Terry Rainey for two days. Since the central issue of diversion is amenability to correction, I find this prior effort to correct Terry Rainey's behavior very significant. Because a prior effort has been made but failed I find that Terry Rainey is likely to be a repeat offender.

Rainey filed a second petition for writ of certiorari with the Chester County Circuit Court. Another hearing was held during which the trial court again heard the arguments of counsel. The trial court granted the second petition, stating in its order:

> This Court has examined several cases applicable to the current fact situation including State v. McKim, 215 S.W.3d 781 (Tenn. 2007). State v. Russell L. Tipton, 2007 WL[]2295610 (Tenn. Crim. App.)[](August 9, 2007) and State v. Galtelli, 2008 WL[]427257 (Tenn. Crim. App.)[](February 13, 2008). While the trial court certainly understands the position of the District Attorney General in this matter, it has respectfully concluded that there is not substantial evidence in the record to support the decision for denial of pretrial diversion.
>
> In a ten paragraph denial letter, the prosecution mentioned the status of the Petitioner as a law enforcement officer in three of the paragraphs. Petitioner's public employment cannot be used to impose a higher standard of conduct to justify denial of pretrial diversion. McKim, 215 S.W.3d at 787; State v. Lane, 56 S.W.3d 20, 27 (Tenn. Crim. App. 2000).
>
> The Petition for Writ of Certiorari is granted. The District Attorney General shall enter into a Memorandum of Understanding with Petitioner pursuant to Tenn. Code Ann. § 40-15-105.

The State filed a timely notice of appeal. It appealed pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure.

## ANALYSIS

In challenging the trial court's decision to order pretrial diversion, the State claims it properly appealed as of right under Rule 3(c) of the Tennessee Rules of Appellate Procedure. Alternatively, the State argues that review is appropriate as an extraordinary appeal under Rule 10(a) of the Tennessee Rules of Appellate Procedure. Rainey contends the State cannot appeal as of right from the trial court's order granting pretrial diversion. Rainey also argues that the circumstances of this case do not warrant review as an extraordinary appeal. Upon examination of the record and the applicable case law, we agree with Rainey.

**Rule 3**. Rule 3(c) of the Tennessee Rules of Appellate Procedure states:

> In criminal actions an appeal as of right by the state lies only from an order or judgment entered by a trial court from which an appeal lies to the

Supreme Court or Court of Criminal Appeals: (1) the substantive effect of which results in dismissing an indictment, information, or complaint; (2) setting aside a verdict of guilty and entering a judgment of acquittal; (3) arresting judgment; (4) granting or refusing to revoke probation; or (5) remanding a child to the juvenile court. The state may also appeal as of right from a final judgment in a habeas corpus, extradition, or post-conviction proceeding.

Rule 3(c) does not explicitly provide for an appeal as of right from an order to grant pretrial diversion. Of the six enumerated instances, the most pertinent would be (c)(1), as the substantial effect of the trial court's order could be viewed as resulting in dismissal of the indictment, information, or complaint. Despite the absence of express language, this Court has considered multiple appeals brought under Rule 3(c). See State v. Skidmore, 15 S.W.3d 502, 506 (Tenn. Crim. App. 1999); State v. Glen Andrew Adams, No. E2007-01754-CCA-R3-CD, 2008 WL 3245565, at *4 n.1 (Tenn. Crim. App, at Knoxville, Aug. 8, 2008); State v. Tony Galtelli, No. W2006-00526-CCA-MR3-CD, 2008 WL 427257, at *6 n.4 (Tenn. Crim. App., at Jackson, Feb. 13, 2008); see also State v. Gordon McGee, Jr., No. M2007-01883-CCA-R3-CD, 2008 WL 4253205, *1-2 (Tenn. Crim. App., at Nashville, Sept. 12, 2008); State v. Theresa Hallsford, No. M2002-00959-CCA-R3-CD, 2002 WL 31852858, at *1 (Tenn. Crim. App., at Knoxville, Dec. 20, 2002); State v. Robbie Carriger, No. E2000-00823-CCA-R3-CD, 2000 WL 1861823, at *1 (Tenn. Crim. App., at Knoxville, Dec. 20, 2000). With the exception of a footnote in State v. Tony Galtelli,[1] these cases do not, however, discuss whether review under Rule 3(c) is proper.[2]

------

[1]Footnote 4 in Tony Galtelli states:

In the order denying the extraordinary interlocutory appeal this Court noted that Rule 3 of the Tennessee Rules of Appellate Procedure was the appropriate vehicle for obtaining appellate review of an order directing a district attorney to place a criminal defendant on pretrial diversion. In support of this assertion the Court cited three cases: State v. Skidmore, 15 S.W.3d 502 (Tenn. Crim. App. 1999); State v. Theresa Hallsford, No. M2002-00959-CCA-R3-CD, 2002 WL 31852858 (Tenn. Crim. App., at Nashville, Dec. 20, 2002); and State v. Robbie Carriger, No. E2000-00823-CCA-R3-CD, 2000 WL 1861823 (Tenn.Crim.App., at Knoxville, Dec. 20, 2000). While these appeals came to this Court pursuant to Rule 3, the question of whether an appeal of right is available to the State under circumstances presented by this case was never questioned or discussed. In view of the fact that this Court's order directed the State to proceed under Rule 3, we accept jurisdiction of this case and will address the merits of the appeal. We note however that a close reading of Rule 3(c), governing appeals by the State in criminal actions, does not explicitly provide for an appeal of right from an order to grant diversion. See Tenn. R. App. P. 3(c).

[2]Rule 38(b)(2) of the Tennessee Rules of Criminal Procedure grants a defendant the right to

(continued...)

There are two published decisions that address whether the State may appeal pretrial diversion decisions under Rule 3(c). In State v. Montgomery, 623 S.W.2d 116 (Tenn. Crim. App. 1981), this Court stated:

> Our court further held that, under either route in diversion cases, granted or denied, the prosecution is only suspended during the period of diversion; the case is not dismissed and is only dismissed at the conclusion of the memorandum of understanding; that the legal effect of the statute in retaining the validity of the charging instrument and in merely suspending the prosecution is to leave the case pending in the trial court.
>
> In accordance with these principles, our court held that an appeal by either side questioning diversion decisions, either granted or denied, must be brought under Rule 9 or Rule 10, T.R.A.P., and cannot come by Rule 3.
>
> . . . .
>
> We adhere to our former holding in this case. We add that if we should reverse the trial court as the state seeks us to do, the case would go back for trial without any further need to obtain a new charging instrument. The indictment is still pending and the case is not ready for a Rule 3 appeal at this time.

Id. at 118. The holding in Montgomery was adhered to by this Court in State v. McDuff, 691 S.W.2d 569, 570 (Tenn. Crim. App. 1984).

Recently, this Court conducted a thorough review of whether the State may appeal pretrial diversion decisions under Rule 3(c). See State v. Cody Matthew Headrick, No. E2008-02598-CCA-MR3-CD, 2009 WL 4505440, at *5-8 (Tenn. Crim. App., at Knoxville, Dec. 4, 2009). This Court focused on the language of Rule 3(c)(1), stating:

> Admittedly, this court has been inconsistent in its jurisdictional treatment of a State's appeal in pretrial diversion cases. However, our supreme court has recently commented on the treatment of Rule 3 appeals initiated by the State prior to dismissal of the charging instrument. In State v.

_____

[2](...continued)
appeal a diversion denial pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure. However, Rule 38 does not grant the State the right to do so.

Meeks, 262 S.W.3d 710 (Tenn. 2008), our supreme court examined the proper route for the State's appealing a trial court's granting a motion to suppress. The court acknowledged that "the courts and the litigants have been left to work through the application of [Tennessee Rules of Appellate Procedure] 3(c), 9, and 10 to orders granting an accused's motion to suppress or exclude evidence. The results have produced procedural confusion." Id. at 719.

In Meeks, the supreme court examined whether a trial court's order suppressing evidence creates a situation where the "substantive effect" of the order "results in dismissing an indictment, information, or complaint" pursuant to Rule 3(c)(1). Id. at 718-20. The supreme court then criticized this court's holdings in several cases "that [Rule 3] does not require an order dismissing the indictment, information, or complaint as a prerequisite to an appeal." Id. at 719. The high court reasoned,

> The Court of Criminal Appeals' interpretation of [Rule 3(c)(1)] misapprehends the plain language of the rule because it overlooks the word "results." The State may appeal as of right from an order suppressing or excluding evidence only when the substantive effect of that order "results" in the dismissal of the indictment, information, or complaint. When used as a verb, the word "result" means "[t]o arise as a consequence, effect, or conclusion from some action, process, etc." or "to end or conclude in a specified manner." 13 Oxford English Dictionary 761 (2d ed. 1989). Thus, to trigger [Rule 3(c)(1)], the order suppressing or excluding the evidence must produce the entry of an order dismissing an indictment, information, or complaint.

Id. at 719-20 (footnote omitted). Thus, our supreme court has made it clear that, in order to necessitate a Rule 3(c)(1) appeal, the dismissal of the case must have actually resulted from a trial court's order.

Applying this logic to a State appeal of a trial court's ordering pretrial diversion, we note that, although pretrial diversion presents an opportunity for a defendant's indictment to be dismissed ultimately, diversion by no means guarantees such dismissal. The statutory scheme governing pretrial diversion provides that "the prosecution will be suspended for a specified period." T.C.A. § 40-15-105(a)(1)(A). The trial court shall then dismiss the charges 90 days after the expiration of the period of suspension "provided, that no termination of the memorandum of understanding has been filed." Id. §

40-15-105(e). Thus, we cannot say that such a "suspension" qualifies as an order that "results" in the dismissal of the case. By suspending the prosecution, a case is essentially continued for a period of time. Further, if a defendant does not comply with the conditions of his diversionary period, prosecution may resume. In light of our supreme court's guidance in Meeks, we must take a stricter approach to Rule 3 appeals, and it is clear that no Rule 3 appeal lies when the trial court orders the prosecutor to grant pretrial diversion.

Cody Matthew Headrick, 2009 WL 4505440, at *7.

We agree with the analysis in Cody Matthew Headrick and hold that the State cannot appeal as of right from the trial court's order granting pretrial diversion. Rule 3(c) does not explicitly provide for an appeal from an order to grant diversion. The Advisory Commission Comment to Rule 3(c) states, "the rule provides that appeals as of right lie only in those circumstances specified in the subdivision." The Tennessee Supreme Court has similarly stated, "[B]y listing the specific circumstances that give the State the right of appeal under Rule 3(c), the rule 'excludes other [circumstances] that are not mentioned.'" State v. Adler, 92 S.W.3d 397, 400 (Tenn. 2002) (quoting State v. Peele, 58 S.W.3d 701, 704 (Tenn. 2001)). Furthermore, in interpreting subsection 3(c)(1), we do not find that the trial court's order "results" in the dismissal of the case. As stated in Cody Matthew Headrick, "although pretrial diversion presents an opportunity for a defendant's indictment to be dismissed ultimately, diversion by no means guarantees such dismissal." Cody Matthew Headrick, 2009 WL 4505440, at *7. Upon review, we conclude that the State cannot appeal from the trial court's order under Rule 3(c).

**Rule 10**. The State requested that its appeal be treated, in the alternative, as an application for an extraordinary appeal. This Court is permitted to review an improperly filed Rule 3 appeal as an extraordinary appeal pursuant to Rule 10(a) of the Tennessee Rules of Appellate Procedure. See State v. Norris, 47 S.W.3d 457, 463 (Tenn. Crim. App. 2000). Rule 10(a) states:

An extraordinary appeal may be sought on application and in the discretion of the appellate court alone of interlocutory orders of a lower court from which an appeal lies to the Supreme Court, Court of Appeals or Court of Criminal Appeals: (1) if the lower court has so far departed from the accepted and usual course of judicial proceedings as to require immediate review, or (2) if necessary for complete determination of the action on appeal as otherwise provided in these rules. The appellate court may issue whatever order is necessary to implement review under this rule.

The Advisory Comment for Rule 10(a) adds:

The circumstances in which review is available under this rule, however, are very narrowly circumscribed to those situations in which the trial court or the intermediate appellate court has acted in an arbitrary fashion, or as may be necessary to permit complete appellate review on a later appeal.

In State v. McKim, the Tennessee Supreme Court further outlined when it is proper for this Court to consider an extraordinary appeal, stating:

[A] Rule 10 extraordinary appeal will lie whenever the prerequisites for common law certiorari exist: the court's ruling represents a fundamental illegality, the ruling fails to proceed according to the essential requirements of the law, the ruling is tantamount to the denial of a party's day in court, the trial court's action is without legal authority, the action of the trial court constitutes a plain and palpable abuse of discretion, or either party has lost a right or interest that may never be recaptured. State v. Willoughby, 594 S.W.2d 388, 392 (Tenn. 1980).

215 S.W.3d at 791.

To determine whether review as an extraordinary appeal is appropriate, we must first examine the procedure for pretrial diversion. Tennessee Code Annotated section 40-15-105(a)(1) allows a district attorney general to suspend prosecution of an eligible defendant for a period of up to two years. A qualified defendant is one who has not been previously granted pretrial diversion and who has no prior misdemeanor convictions requiring the service of a sentence of confinement, or no other felony convictions. T.C.A. § 40-15-105(a)(1)(B)(i)(a)-(b). In addition, the offense for which a defendant seeks pretrial diversion cannot be a Class A or Class B felony, a Class C felony pertaining to a sexual offense, driving under the influence, or vehicular assault. Id. In order to be granted diversion, a defendant must agree to complete certain conditions for the duration of the diversion period. Id. Upon completion of pretrial diversion, the charges against the defendant shall be dismissed with prejudice. Id.

Although statutorily eligible, a qualified defendant is not presumed to be entitled to pretrial diversion. State v. Curry, 988 S.W.2d 153, 157 (Tenn. 1999). The decision to grant or deny pretrial diversion lies within the discretion of the district attorney general. T.C.A. § 40-15-105(b)(3); State v. Pinkham, 955 S.W.2d 956, 959 (Tenn. 1997). The defendant

-11-

seeking pretrial diversion has the responsibility to establish the suitability of pretrial diversion. Id.

The following relevant factors must be considered by the prosecutor when determining whether to grant or deny pretrial diversion: (1) the defendant's amenability to correction; (2) the defendant's propensity to re-offend; (3) the defendant's criminal record; (4) the defendant's social and family history; (5) where appropriate, the defendant's physical and mental condition; (6) the deterrent effect that prosecution might have on the defendant and others; and (7) whether pretrial diversion will serve the best interests of the public and the defendant. Pinkham, 955 S.W.2d at 956-60; State v. Hammersly, 650 S.W.2d 352, 355 (Tenn. 1983). Additionally, the following factors and circumstances may also be considered to determine if pretrial diversion is warranted: the circumstances of the offense, the defendant's attitude and behavior since arrest, the defendant's home environment, current drug use, emotional stability, the defendant's employment history, the defendant's general reputation, marital stability, family responsibility, and attitude toward law enforcement. State v. Washington, 866 S.W.2d 950, 951 (Tenn. 1993) (citations omitted). "If the district attorney general denies pretrial diversion, that denial must be written and must include both an enumeration of the evidence that was considered and a discussion of the factors considered and weight accorded each." Pinkham, 955 S.W.2d at 960 (citing State v. Winsett, 882 S.W.2d 806, 810 (Tenn. Crim. App. 1993)). Finally, the district attorney general must supply a factual basis and rationale stating why pretrial diversion was denied. Pinkham, 955 S.W.2d at 960.

If the application for pretrial diversion is denied, the defendant may seek a writ of certiorari in the trial court. T.C.A. § 40-15-105(b)(3). The prosecutor's decision to deny pretrial diversion is presumptively correct and is subject to review by a trial court for an abuse of discretion. Hammersly, 650 S.W.2d at 356. To determine whether the prosecutor has abused his discretion, the trial court must consider all the relevant factors and whether there is substantial evidence to support the prosecutor's findings regarding a denial of pretrial diversion. State v. Yancey, 69 S.W.3d 553, 557-58 (Tenn. 2002).

Upon review of the writ of certiorari, the trial court must: (1) limit its consideration to the evidence which was before the prosecutor and the reasons given by the prosecutor in denying diversion; (2) conduct a hearing only to resolve any factual disputes raised by the prosecutor or the defendant concerning the petition but not to hear additional evidence; (3) adhere to the same case-by-case balancing procedure that is imposed upon the prosecutor; and (4) state its findings in writing. State v. Oakes, 269 S.W.3d 574, 578 (Tenn. Crim. App. 2006) (internal citations omitted).

In the present case, the State argues the trial court "so far departed from the accepted and usual course of judicial proceedings as to require immediate review." The State claims the trial court re-weighed the evidence and substituted its judgment for that of the district attorney general. This claim is not, however, supported by the record. Following Rainey's first petition for writ of certiorari, the trial court ordered the district attorney general to reconsider Rainey's request for pretrial diversion. The trial court found that a higher standard of conduct was placed on Rainey because of his position as a trooper for the Tennessee Highway Patrol. This court has stated that placing a higher standard of conduct on public officials for off-duty acts is improper. See State v. Lane, 56 S.W.3d 20, 27 (Tenn. Crim. App. 2000) ( "[O]ff-duty acts that are unrelated to this defendant's duties of public employment are not a proper basis for imposing a higher standard of conduct and thereby justifying a denial of pretrial diversion.").[3]

On remand, Rainey was again denied pretrial diversion. The second letter denying pretrial diversion was nearly identical to the first. The second letter removed the following sentence: "I also consider the fact that Terry committed a breach of trust related to his work when he committed this offense." However, it added the line: "These factors considered in light of the fact that Terry Rainey is trained in the law and acted contrary to his training in committing these crimes indicate that he will be a repeat offender." Importantly, the second letter continued to include the following paragraphs:

> I weigh the fact that Terry committed a public breach of trust against granting diversion. Terry was a sworn officer of the law when he committed these crimes of violence against his own parents. I weigh this breach of the public trust heavily against diversion.
>
> . . . .
>
> I find that it would greatly undermine the confidence of the community in law enforcement to agree to pretrial diversion with Terry Rainey. Agreeing to diversion would give the impression that Terry Rainey is receiving special or differential treatment because he has friends in the judicial system. This perception would greatly undermine the Community's attitude towards law enforcement. I weigh this [factor] against diversion. Having considered the foregoing factors I conclude that there is substantial basis to believe that Terry

---

[3]We acknowledge that this Court held that a public official is held to a higher standard when the criminal acts occur while on duty and when the criminal acts are accomplished through the use of an official vehicle. See State v. Ricky Joe Headley, No. M2008-01185-CCA-R3-CD, 2009 WL 3103791, at *7 (Tenn. Crim. App., at Nashville, Sept. 29, 2009), perm. to appeal denied (Tenn. Mar. 15, 2010).

Rainey would reoffend under similar circumstances. I also find that the detrimental impact to the public trust makes pretrial diversion out of the question. I therefore decline to enter into a pretrial diversion agreement with Terry Rainey.

The second letter shows that the district attorney general again considered Rainey's position as public officer and held him to a higher standard of conduct. This is most evident when the letter discusses how Rainey "acted contrary to his training" and how granting pretrial diversion would negatively affect the community's perception of law enforcement. Because the charged offenses concerned Rainey's off-duty conduct, the district attorney general should not have imposed a higher standard of conduct based on Rainey's position as a trooper. Consequently, we cannot conclude under Rule 10(a) that the trial court "so far departed from the accepted and usual course of judicial proceedings as to require immediate review."

The State also asserts that review as an extraordinary appeal is warranted because it "may otherwise lose a right or interest that may never be recaptured." McKim, 215 S.W.3d at 791-92. The State claims that following the trial court's decision to order pretrial diversion, its only avenue to appeal was Rule 10. This claim is unfounded, as the State was permitted to file an interlocutory appeal pursuant to Rule 9. See State v. William Earl Cherry, No. M2005-02327-CCA-R9-CO, 2006 WL 2069424, at *1 (Tenn. Crim. App, at Nashville, July 26, 2006); State v. James M. Jansen and Scott R. Luckman, No. 02C01-9805-CC-00158, 1999 WL 460074, at *1 (Tenn. Crim. App., at Jackson, July 8, 1999); State v. Kimberly Kay Matheny, No. C-86250, 1987 WL 5335, at *1 (Tenn. Crim. App., at Knoxville, Jan. 14, 1987); see also State v. Gina Lola Smith, No. M2006-02150-CCA-R9-CD, 2007 WL 1028534, at *1 (Tenn. Crim. App., at Nashville, April 4, 2007); State v. Jesse G. Fuqua, No. 01C01-9402-CC-00044, 1994 WL 714209, at *1 (Tenn. Crim. App., at Nashville, Dec. 22, 1994). In consideration of the State's failure to seek Rule 9 review, we cannot conclude that the State "lost a right or interest that may never be recaptured." McKim, 215 S.W.3d at 791.

The State has not shown that the trial court "so far departed from the accepted and usual course of judicial proceedings as to require immediate review," or that its appeal is "necessary for complete determination of the action on appeal." See Tenn. R. App. P. 10(a). Therefore, we decline review under Rule 10(a).

## CONCLUSION

We hold that the State improperly appealed the trial court's order under Rule 3 of the Tennessee Rules of Appellate Procedure. We also conclude that this case is not appropriate

for review as an extraordinary appeal under Rule 10 of the Tennessee Rules of Appellate Procedure.  Accordingly, this appeal is dismissed.


_____
CAMILLE R. McMULLEN, JUDGE